CLIFTON R. & ANNABEL L. BARKLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Barkley v. Commissioner
Docket No. 7095-74
United States Tax Court
T.C. Memo 1976-159; 1976 Tax Ct. Memo LEXIS 245; 35 T.C.M. (CCH) 707; T.C.M. (RIA) 760159; May 20, 1976, Filed *245 Held: Traveling expenses incurred by petitioner while temporarily employed away from his principal place of employment are deductible under section 162(a)(2), I.R.C. 1954, as amended. Rexford R. Cherryman, for the petitioners. John C. McDougal, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined a deficiency of $747.88 in petitioners' 1972 Federal income tax. The deficiency resulted from respondent's disallowance *246 of deductions claimed for travel and living expenses pursuant to section 162(a)(2). [1]/ The issue for decision is whether petitioner Clifton R. Barkley was "away from home" during a portion of 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts with exhibits attached thereto are incorporated herein by this reference. Petitioners filed a joint income tax return for the taxable year 1972 with the district director of internal revenue, Richmond, Virginia. Petitioners were domiciliaries of the Tidewater area of Virginia and maintained a residence at 504 Amster Lane, Chesapeake, Virginia, during the tax year in issue and at the time of the filing of their petition. Chesapeake, Virginia is located adjacent to Norfolk, Virginia. Petitioner Annabel L. Barkley was not employed during 1972 and remained in the home to care for petitioners' three adopted grandchildren. Hereafter "petitioner" will refer to Clifton R. Barkley. Petitioner was a crane operator and a member of the Operating Engineers Union, Local 147, Norfolk, Virginia. Due to the nature *247 of the crane operating profession, petitioner did not have a permanent employer. He relied on referrals from the union to job sites in the Norfolk vicinity. When a job became available, the union would dispatch a qualified member whose name appeared on the out-of-work list. Crane operators were offered employment from the union according to the position of their names on the list; seniority was not a factor in job placement. Operators were normally laid off when the particular task for which they were hired was completed. Prior to February 29, 1972, the union hall in Norfolk referred petitioner to numerous jobs in and around Norfolk. Petitioner was also eligible for referrals from the union office in Richmond. Some jobs were of very short duration while others lasted in excess of one year. On February 29, 1972, petitioner was referred to a job with McKinney Drilling Company (McKinney) in Louisa County, Virginia. McKinney was a sub-contractor working on the construction of the North Anna Power Station, a nuclear power facility, near the small community of Mineral in Louisa County. The distance between petitioner's home in Chesapeake and the construction site was 154 miles. *248 Petitioner was employed with McKinney until about April 1, 1972, when he was laid off. Within a few days petitioner was referred to a job at the same construction site with Stone and Webster Engineering Corporation (S. & W), general contractors for the North Anna Power Station. At the time petitioner accepted this job there were 63 names on the out-of-work list at the Norfolk union hall and 50 names on the list in Richmond. [2]/ Petitioner retained this job at the Louisa County site until he was laid off on August 17, 1973. At the time petitioner took the job with S & W, there was no agreement as to the length of his employment. There was an understanding that petitioner's job would not last until the completion of the entire project which was expected to extend over three or four years. Petitioner was assigned a crane and it was anticipated that the job *249 would last only as long as that crane was needed. A few days after beginning work with S & W, five crane operators and four crane mechanics working on the project were laid off. Some of these operators had worked at the site for nine to eleven months. Petitioner's crane was shut down on four or five occasions during his employment with S & W, however, in each instance petitioner was able to move to a new crane where a vacancy had just arisen. While employed with S & W during 1972, petitioner stayed in a rented room 18 miles from the job site and took most of his meals at a restaurant. On most weekends petitioner drove to Chesapeake to be with his family. Petitioner incurred expenses for food, lodging and transportation while working for S & W during 1972 in the amount of $3,775.00. When petitioner was laid off on August 17, 1973, he called the union hall in Norfolk and was advised that a job would soon be available at Winchester, Virginia. At that time there were 74 names on the out-of-work list in Norfolk. Winchester is located approximately 240 miles from Chesapeake. Petitioner proceeded to Winchester and worked four weeks on the construction of a metal building before *250 returning to Norfolk. OPINION Traveling expenses are properly deductible under section 162(a)(2)[3]/ when the taxpayer establishes that the expenses were (1) reasonable and necessary, (2) incurred while "away from home," and (3) incurred in the pursuit of business. Commissioner v. Flowers,326 U.S. 465 (1946). Respondent contends that the second condition has not been satisfied since petitioner was not "away-from-home" while employed by S & W during 1972. The term "home" (or "tax home") as used in section 162(a)(2) is a term of art which may or may not be the location of the taxpayer's domicile or personal residence. This Court has defined "home" for purposes of the statute *251 as the vicinity of a taxpayer's principal place of employment or post of duty. Edward F. Blatnick,56 T.C. 1344 (1971); Ronald D. Kroll,49 T.C. 557 (1968); Leo M. Verner,39 T.C. 749 (1963); Mort L. Bixler,5 B.T.A. 1181 (1927). Thus the normal and necessary expenses for meals and lodging incurred in the vicinity of a taxpayer's place of employment, or "tax home," are personal expenses to be borne by each taxpayer. Section 262. A long-standing exception to this rule permits a taxpayer to deduct additional costs incurred if temporarily employed away from his permanent home. Peurifov v. Commissioner,358 U.S. 59 (1958), affirming per curiam 254 F. 2d 483 (C.A. 4, 1957); Emil J. Michaels,53 T.C. 269 (1969); Harry F. Schurer,3 T.C. 544 (1944). However, if such employment is for an indefinite or indeterminate period, the taxpayer's new post of duty becomes his tax home and additional living expenses are not deductible. Puerifoy v. Commissioner,supra; Kermit L. Claunch,29 T.C. 1047 (1958), affd. 264 F. 2d 309 *252 (C.A. 5, 1959). Temporary employment is that in which termination within a fixed or reasonably short period of time can be foreseen. Beatrice H. Albert,13 T.C. 129 (1949). Circumstances may change what was originally temporary employment to employment of indefinite or indeterminate duration, and, in that event, the location of such employment becomes the taxpayer's home for purposes of the statute. Ronald D. Kroll,supra;Leo M. Verner,supra;Floyd Garlock,34 T.C. 611 (1960).We must decide whether petitioner's employment with S & W was temporary, thereby entitling petitioner to the deductions in dispute, or indefinite. The question is one of fact and depends on the particular circumstances of each case. There is no doubt that the Chesapeake vicinity was petitioner's tax home prior to April 1972. We find that petitioner's employment with S & W was for only a temporary period and that the Chesapeake area remained his tax home through 1972. Petitioner accepted the job with S & W only because there were no jobs immediately available in the Chesapeake-Norfolk area. Petitioner faced the dilemma of accepting *253 work at some distant point or becoming unemployed for a considerable period of time. While petitioner's employment was not for a fixed period, several significant factors support our finding that termination within a reasonably brief period was contemplated. For instance, it is customary in petitioner's occupation to be assigned many jobs which will last for a few days or weeks. Just prior to his assignment with S & W, petitioner had operated a crane at the same construction site for only five weeks before being laid off. Petitioner was also informed that his job would not continue for the duration of the entire project. Furthermore, within two days of beginning work there were five operators laid off. Because of these and other circumstances, we think the job with S & W can only be characterized as temporary despite the fact that petitioner remained an employee for approximately 16 months. Respondent contends that the situation present in FloydGarlock,supra, is analogous to the case at bar. In Garlock the taxpayer was a heavy equipment mechanic who maintained his domicile and a dwelling house in Mohawk, New York. He was affiliated with a union *254 local in Binghamton, New York, which referred him to a job with a construction company working in or near Passaic, New Jersey. The taxpayer worked for the construction firm at several job sites in the Passaic vicinity from November 1950 until some time in 1954.The taxpayer was employed on a weekly basis and his employment depended on a continuing need for his skills. We held that the taxpayer's employment was indefinite and that his home during 1952 and 1953, for purposes of the predecessor provision of section 162(a)(2), was the Passaic vicinity. Since Passaic was his tax home, his expenses there were not deductible. While Garlock is in many respects similar to the present case, there are striking dissimilarities which emphasize why the instant case calls for an opposite result.
First, Garlock was employed for over three years in one general location. Employment of that duration strongly suggests a shifting of one's tax home. Petitioner's service with S & W was for a much shorter period. Secondly, Garlock had worked in the same location for more than one year prior to the two years (1952 and 1953) which were at issue before the Court. Here, on the other hand, we are asked *255 to determine the nature of petitioner's employment during a portion of the first tax year in which he worked for S & W. While it could be argued that at some point petitioner's employment changed from temporary to indefinite, see Garlock at 616, we are convinced that such transformation, if it occurred, did not happen during 1972. Also, there was a shortage of heavy equipment mechanics in Garlock which increased the likelihood that the taxpayer's employment would last indefinitely. Petitioner had to contend with the opposite circumstance, i.e., a shortage of work and an abundance of crane operators.And finally, if Garlock completed work at one site, his employer could shift him to another site in the Passaic area where his skills were needed. In contrast, when petitioner's work was finished, he was permanently laid off. There was no mobility to another site in the Louisa County area.In light of these findings, we conclude that petitioner may deduct the expenses incurred during 1972 while temporarily employed away from Chesapeake, Virginia. Decision will be entered for the petitioners.
Footnotes
1. /↩ Section references are to the Internal Revenue Code of 1954, as amended.
2. /↩ Although the record is unclear on this point, it appears that union members could accept or decline referrals from the union to sites outside the Norfolk area. This would explain why petitioner was able to get work almost immediately even though many names appeared ahead of his on the out-of-work lists.
3. /SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and * * * * *↩