DENNIS M. AND LINDA K. BABEAUX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Babeaux v. Commissioner
Docket Nos. 2540-76, 9216-76.
United States Tax Court
T.C. Memo 1977-154; 1977 Tax Ct. Memo LEXIS 288; 36 T.C.M. (CCH) 657; T.C.M. (RIA) 770154; May 23, 1977, Filed Dennis M. Babeaux, pro se. Mathew E. Bates, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: In these consolidated cases respondent determined deficiencies of $1,797.85 and $1,486.28 in petitioners' Federal income taxes for the years 1973 and 1974, respectively.The only issue for decision is whether certain expenditures during these years were incurred by the petitioner "while away from home" within the meaning of section 162(a)(2) [1] and, thus, are properly allowable as ordinary and necessary business expenses. *289 FINDINGS OF FACT Some of the facts have been stipulated.The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by reference and are found accordingly. Dennis M. Babeaux (petitioner) and Linda K. Babeaux (Linda), the petitioners herein, resided in Edenton, North Carolina, at the time of filing their petition in this case. They filed their joint Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioners have owned the same house in Edenton for fifteen years, where they live with their two children. During 1973 and 1974 Linda was employed full time as a nurse in Edenton, a position she had held for ten years. The two children attended school in Edenton. Petitioners paid real estate and income taxes in North Carolina; they voted there; and, prior to petitioner's assignment at Lusby, Maryland, both of them worked in or around Edenton. Their automobile is registered there. During 1973 and the first half of 1974, Linda and the children resided in their home and petitioner spent weekends there. Petitioner is a member of the United Association of Journeymen *290 and Apprentices of the Plumbing and Pipefitting Industry Local No. 785 with headquarters in Raleigh, North Carolina.It is the practice of the Local 785 to contact other locals around the country if there is no work in the home area. Because there were few jobs for welders in or near North Carolina in 1972, Local 785 helped petitioner obtain employment outside the immediate vicinity of Edenton when the job in which he had been employed ended in August 1972. During September 1972, petitioner began work as a welder on the construction of a nuclear power plant near Lusby, Maryland, where he stayed while working on the project. He made no commitment to the project as to length of employment and was told nothing concerning the duration of the assignment. Lusby is located approximately 270 miles from Edenton on the southern tip of the Chesapeake Bay. There is one motel there and housing is not readily available. The nearest school is 20 miles away. Construction on the project had been under way for several months before petitioner started work there. He continued to work at the project until June 1974, at which time he quit the project to take a welder job near Edenton. While *291 working on the project near Lusby, petitioner was unable to join the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Local No. 602, in Washington, D.C., due to his affiliation with Local 785. This meant he would have been laid off at the project before the members of Local 602 who were at work on the project. In order to transfer locals, petitioner would have had to move his family to Maryland and pay taxes in that state for one year prior to consideration of acceptance into Local 602. That was a risky proposition because at any time during the first year he still could have been laid off without having the benefit of any Plumbing and Pipefitters Local, since he would have relinquished membership in Local 785 in the process. In addition, the threat of a layoff was a genuine concern to him. The project released people every week without prior warning. One week 150 people were let go. Petitioner traveled to and from Lusby almost every week, returning to Edenton on weekends. On their joint Federal income tax return for 1973, petitioners claimed the following deductions as employee business expenses: Transportation
$3,384.00
Meals and lodging
3,600.00
Total
$6,984.00
*292 Petitioners have substantiated the expenditures claimed on their 1973 return. On their joint Federal income tax return for 1974, petitioners claimed the following deductions as employee business expenses: Transportation
$3,317.00
Meals and lodging
2,550.00
Total
$5,867.00
Petitioners have substantiated the expenditures claimed on their 1974 return. ULTIMATE FINDINGS OF FACT 1. Petitioner's employment in Lusby was temporary in 1973 and 1974. 2. Petitioner's "home" for tax purposes during 1973 and 1974 was Edenton. OPINION Once again we are in the bramblebush of the phrase "while away from home in the pursuit of a trade or business" included in section 162(a)(2). [2] Petitioner contends that his "home" in 1973 and 1974 was Edenton, North Carolina, and that while he was temporarily employed in Lusby, Maryland, he was entitled to a deduction for expenses incurred for transportation, meals, and lodging while traveling away from home. To the contrary, respondent contends that petitioner's job assignment at Lusby was indefinite and, therefore, he is not entitled to any deductions for expenses paid for meals and lodging while in Lusby, or transportation *293 to and from there. Where a taxpayer maintains a personal residence at one location, but accepts an employment assignment of short and reasonably definite duration elsewhere, he is permitted a deduction for business expenses incurred while away from his home, , affg. , thereby avoiding the burden of duplicate living expenses while at a temporary job site. . The problem occurs in determining where to draw the line between a temporary work site and an assignment which is so indefinite as to require that one transfer his home base to his job site. See , *294 and cases cited therein. Since an analysis of the cases reveals that "neither reconciliation nor deduction of a universally applicable rule is possible," , the litany of authority on this subject weighs the particular facts of each case to determine on which side of the line the case falls. As stated in : * * * the deductibility of traveling expenses and duplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment. Relevant considerations include whether the taxpayer had a logical expectation that the employment would last for a short period, an assuredness that the job itself would not extend beyond a reasonably brief duration, an inordinate duplication of living expenses, and enough financial, familial and social bonds to prudently choose to remain at his original residence rather than relocate his family and home at his present work site. In view of the facts and circumstances present in this *295 case, we find, on balance, that the scales tip in favor of petitioner. We think his employment assignment in Lusby was temporary, and that his "tax home" in 1973 and 1974 was Edenton. We reach this conclusion by applying the criteria previously mentioned, the intentions and actions of petitioner, and the contacts and interests he maintained with Edenton throughout the years in question. At all times the petitioner intended the work assignment at Lusby to be temporary. In recognition of his economic plight he accepted employment as a welder away from home until he could obtain a similar job near his home and his family. As a member of Local 785 in Raleigh, he was precluded from joining Local 602 in Washington, D.C., which had job seniority within the union hierarchy at the Lusby project. Consequently, he could have been laid off the project at any time without notice before any members of Local 602 who were working there.
The Lusby project was ongoing. It began before petitioner's employment and continued beyond his departure. We find it significant that as soon as he was able to find a similar job near Edenton, he immediately left the Lusby project and returned home. It *296 is clear that petitioner only expected to work apart from his family and home until his perseverance in obtaining work near his family was rewarded. Cf. ; . Moreover, petitioner's contacts with Edenton were substantial. He resisted uprooting his family and home to move to a work site as unreliable and remote as Lusby. He and his wife owned their home in Edenton for many years prior to his employment difficulties. His wife had worked there as a nurse for several years and continued to do so throughout petitioner's unemployment and his temporary absence to work in Lusby. Their children attend school in Edenton. Virtually all of their familial, financial and social bonds were there. All in all, we are satisfied that Edenton, North Carolina, was petitioner's "home" within the ambit of section 162(a)(2). He is entitled to deduct the expenses incurred for meals and lodging while in Lusby, Maryland, during the years 1973 and 1974, and the transportation expenses incurred from Edenton to Lusby and return. Respondent has not contested the amounts *297 of deductions claimed. To reflect other issues conceded by the parties and our conclusions herein. Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved, unless otherwise indicated.↩
2. SEC. 162(a). In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩