Argued September 13, 1978, affirmed June 19,1979

DEBLOCK, et ux, *Appellants,*
*v.*
DEPARTMENT OF REVENUE, *Respondent.*
(No. TC 1042, SC 25526)

SLEGERS, et ux, *Appellants,*
*v.*
DEPARTMENT OF REVENUE, *Respondent.*
(No.TC 1055, SC 25525)

(Cases consolidated on appeal)

596 P2d 560

Donald H. Burnett, Portland, argued the cause for appellants. With him on the briefs were Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman and I. Franklin Hunsaker.

James H. Manary, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General.

Before Denecke, Chief Justice, and Tongue, Bryson,* and Linde, Justices.

LINDE, J.

*Bryson, J., retired April 1, 1979.

## LINDE, J.

The question when the cost of traveling to a distant worksite may be deducted from income for tax purposes has long been controversial in federal income tax law. Since Oregon's legislative assembly has decided "in so far as possible, to make the Oregon personal income tax law identical in effect to the [federal law] relating to the measurement of taxable income of individuals," ORS 316.007, we are called upon to determine whether the Department of Revenue and the Oregon Tax Court have correctly ascertained and applied the federal rules on this question for the taxable years involved.

The plaintiffs in these cases, Gregory L. Deblock and Richard K. Slegers[1] are steamfitters residing in the Portland metropolitan area. During the years in question, each was employed in the construction of the Trojan power plant near Rainier, Oregon, Deblock in 1972 and 1973 and Slegers in 1972, 1973, and 1974. Slegers drove his automobile 130 miles daily between his home and the construction site; Deblock's roundtrip was 92 miles. Each of them deducted a portion of these driving expenses from his gross income on his federal and state tax returns. These deductions were disallowed, and defendant Department of Revenue assessed the deficiencies challenged here. The Tax Court sustained the assessments, and plaintiffs appealed.

■ *The applicable law.* The Oregon income tax law adopts by reference the federal provisions allowing the deduction of trade or business expenses in 26 USC § 162(a) and denying such a deduction for "personal, living, or family expenses" in 26 USC § 262.[2] ORS 316.012 states that the terms of the state

---

[1] Because each plaintiff filed joint income tax returns with his wife, the wives were joined as plaintiffs.

[2] 26 USC § 162(a):

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in

income tax law shall have the same meaning as in the federal law and, as already mentioned, ORS 316.007 instructs the Department to follow, insofar as possible, the federal rule on the application of these provisions. However, the parties find themselves in disagreement on the most authoritative version of the federal rule. Since this eventuality was not unforeseeable, ORS 316.032(2) provides:

"In so far as is practicable in the administration of this chapter, the department shall apply and follow the administrative and judicial interpretations of the federal income tax law. When a provision of the federal income tax law is the subject of conflicting opinions by two or more federal courts, the department shall follow the rule observed by the United States Commissioner of Internal Revenue until the conflict is resolved. Nothing contained in this section limits the right or duty of the department to audit the return of any taxpayer or to determine any fact relating to the tax liability of any taxpayer."

Accordingly, the parties have helpfully guided us through the landmarks of past and continuing skirmishes on the battleground of job-related travel expenses.[3] We shall not retrace the campaign here.

carrying on any trade or business, including—
\* \* \* \*

"(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in pursuit of a trade or business; \* \* \*"

26 USC § 262:

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses \* \* \* \*"

ORS 316.037 imposes a tax on the "entire taxable income" of every Oregon resident. ORS 316.048 and 316.022(5) define "taxable income" by reference to the federal revenue code.

[3] The Supreme Court and Court of Appeals' decisions include *Commissioner v. Flowers*, 326 US 465, 66 S Ct 250, 90 L Ed 203 (1946); *Peurifoy v. Commissioner*, 358 US 59, 79 S Ct 104, 3 L Ed 2d 30 (1958); *United States v. Correll*, 389 US 299, 88 S Ct 445, 19 L Ed 2d 537 (1967); *Fausner v. Commissioner*, 413 US 838, 93 S Ct 2820, 37 L Ed 2d 996, *rehearing denied*,

Briefly, the following variables seem to have emerged as determinative. Traveling expenses "while away from home" within the terms of 26 USC § 162(a)(2) can be claimed only when the taxpayer must sleep or rest away from home overnight. *United States v. Correll*, 389 US 299, 88 S Ct 445, 19 L Ed 2d 537 (1967). If travel expenses can be characterized as "ordinary commuting expenses" occasioned by the taxpayer's choice of a residence far from his usual place of work, they are not deductible. *Commissioner v. Flowers*, 326 US 465, 66 S Ct 250, 90 L Ed 203 (1946). Even if an unusually long distance between home and jobsite is a matter of necessity rather than preference, this alone will not turn personal "commuting expenses" into deductible travel expenses under 26 USC § 162(a). *U.S. v. Tauferner*, 407 F2d 243 (10th Cir 1969); *Sanders v. C.I.R.*, 439 F2d 296 (9th Cir 1971).

While successfully opposing "necessity" as the test, the Commissioner of Internal Revenue has maintained that the deductibility of travel expenses, including daily roundtrips, depends on whether the taxpayer's employment at the distant location is "temporary" or "indefinite." *See* Rev Rul 54-497, 1954-2 CB 75, 82; Rev Rul 190, 1953-2 CB 303; Rev Rul 59-371, 1959-2 CB 236; Rev Rul 60-189, 1960-61 CB 60; Rev Rule 61-95, 1961-1 CB 749. Defendant Department of Revenue contends that this position of the commissioner contradicts the legislative history of the internal revenue code, court decisions interpreting the code, and the commissioner's own regulations, and it states the issue before us to be whether defendant should

414 US 882, 94 S Ct 43, 38 L Ed 2d 130 (1973); *Crowther v. Commissioner*, 269 F2d 292 (9th Cir 1959); *Harvey v. Commissioner*, 283 F2d 491 (9th Cir 1960); *Wright v. Hartsell*, 305 F2d 221 (9th Cir 1962); *Mathews v. Commissioner*, 310 F2d 98 (9th Cir 1962); *Smith v. Warren*, 388 F2d 671 (9th Cir 1968); *United States v. Tauferner*, 407 F2d 243 (10th Cir 1969); *Sanders v. Commissioner*, 439 F2d 296 (9th Cir 1971); *Boone v. United States*, 482 F2d 417 (5th Cir 1973); *Coker v. Commissioner*, 487 F2d 593 (2d Cir 1973). The evolution of the commissioner's rulings and tax court decisions is also reviewed in Milton, Logan, and Tallant, *The Travelling Taxpayer: A Rational Framework for His Deductions*, 29 U Fla L Rev 119 (1976).

follow the legislative history, the regulations, and judicial interpretations, or the commissioner's administrative interpretations. In support, defendant asserts that the United States Tax Court in 1971 rejected the distinction that would make commuting expenses deductible if the employment was "temporary" rather than "indefinite," *William B. Turner*, 56 TC 27 (1971), that on Turner's appeal to the Court of Appeals for the Second Circuit the commissioner agreed with the taxpayer to have the tax court's decision vacated and remanded, and that the commissioner thereafter forestalled renewed Tax Court rejection of his distinction in later cases by stipulating to frame the issue on review in terms of that distinction. *See Lawrence W. Norwood*, 66 TC 467 (1976).

It may well be that the United States Tax Court has concluded that the anticipated or actual duration of one's employment at a distant location is irrelevant to the deductibility of travel expenses not requiring overnight stops, as the Department of Revenue asserts; but that does not dispose of the question. When ORS 316.032, *supra,* instructs the Department to follow the "administrative and judicial interpretations" of the federal law, no doubt a decision of the United States Supreme Court is conclusive. Likewise, the directive to follow the commissioner's rule when two or more federal courts disagree probably contemplated a conflict between the courts of appeals for two circuits. The directive of ORS 316.032 is somewhat more obscure when the conflict is between a tax court or district court decision and a court of appeals opinion in a later case, or when the commissioner declines to acquiesce in a single court decision.

In fact, soon after the tax court's *Turner* decision, the Fifth Circuit treated the expenses of daily travel to "temporary" employment as an "exception" to the nondeductibility of commuting expenses without questioning its continued vitality. *Boone v. United States,* 482 F2d 417 (5th Cir 1973). Perhaps our understanding of these apparently divergent decisions is not as

informed as it might be because plaintiffs do not discuss *Turner*, relied on by defendant, and defendant does not discuss *Boone*, cited by plaintiffs. In any event, the most that can be said for the tax court decisions relied on by the Department is that they give rise to a conflict about the relevance of temporary employment, and in case of a conflict ORS 316.032 instructs the Department to follow the rule *observed by* the commissioner. We take the emphasized words to mean that the legislature cared more about trying to maintain parallel rules of tax administration in practice than about policing the commissioner's interpretation of the federal tax laws when the correct interpretation had not been settled by federal courts.

Plaintiffs, however, face the same problem when they in turn rely on recent United States Tax Court opinions to push the deduction for "temporary" travel expenses further than the commissioner is prepared to accept. Plaintiffs cite two tax court opinions *(Lawrence W. Norwood, supra,* and *Clifton R. Barkley*, 35 T.C.M. 707 (1976)) for the proposition that a construction worker may always treat his first year on a distant project as temporary even if it proves to continue indefinitely, and two others for a test that the deductibility of travel expenses depends on whether the taxpayer "under all the circumstances" could reasonably have been expected to move his residence and family, if any, to the vicinity of the job. *Ita L. Patrick*, 36 T.C.M. 655 (1977); *Dennis M. Babeaux*, 36 T.C.M. 657 (1977). But three of these tax court opinions deal with the issue whether employment was temporary for the purpose of determining whether taxpayers who took up quarters near the job site had changed their "tax home" or were "away from home"—an issue not involved here—and the fourth opinion, *Norwood*, made it clear that the court had not changed its view that the "temporary employment" issue was irrelevant to a daily commuter. 66 TC 467 at 469. While the discussions of the nature of "temporary" employment

in these opinions might be persuasive to the commissioner, they interpret 26 USC § 162(a)(2), not the general clause of 26 USC § 162(a), and the commissioner is not bound to accept them.

■ The commissioner in fact disagreed with a test based upon the "reasonableness" of not moving one's residence when it was expressed in a 1960 case, *Harvey v. Commissioner*, 283 F2d 491, 495 (9th Cir 1960). Instead, in Rev Rul 61-95, 1961-2 CB 749, the commissioner maintained the position that the "temporary v. indefinite" test was the correct one. Under this test, employment is "temporary" only if "termination * * * within a reasonably short period of time is foreseeable," citing *Commissioner v. Peurifoy*, 254 F2d 483 (4th Cir 1957), which was affirmed by the Supreme Court in *Peurifoy v. Commissioner*, 358 US 59, 79 S Ct 104, 3 L Ed 2d 30 (1958), and followed in *Claunch v. Commissioner*, 264 F2d 309 (5th Cir 1959). So far as we are informed, this is still his position.[4]

*Application to these cases.* Plaintiffs urge upon us two considerations of "fairness, ease of administration, the economic realities of the 1970's," and "public policy," which they think compatible with 26 USC § 162. First, both had wives who were employed in the Portland area and children who attended schools in the localities where the families owned their homes. It was impractical to move the families to an area near the construction site because housing was limited and because the wives, if they were to continue working, would have had the same driving expenses without the benefit of an allowance which was available to the men. These facts would bear on the "reasonableness" of maintaining the existing family homes under the

[4] In a 1976 Revenue Ruling, the commissioner was prepared to reverse himself and follow the *Turner* reasoning disallowing deduction for daily commuting expenses regardless of the temporary nature of the job. However, Revenue Ruling 76-453, 1976-2 CB 86 never went into effect. After the commissioner suspended it indefinitely in 1977, Congress directed that determinations of the deductibility of such expenses be made without regard to Revenue Ruling 76-453 or any similar rule until 1980. Act of Oct. 6, 1978, PL 95-427 § 2.

recent tax court cases discussed above if the issue were whether the plaintiffs were "away from home" for purposes of § 162(a)(2), but since they did not spend nights away from home, this is not the issue.

Second, plaintiffs urge the practical desirability of a rule that would measure the deductibility of transportation expenses by distance traveled beyond a so-called "free zone" rather than by the duration of the employment. The "free zone" is the central area (here a 10-mile radius from the Portland city hall) beyond which the labor contracts of construction unions like that under which plaintiffs worked require the payment of supplemental compensation. Although we doubt the propriety of turning the tax consequences of transportation costs over to negotiation between private employers and unions, we recognize the special characteristics of employment on construction projects that have given rise to many of the litigated claims of transportation and "away from home" deductions; but plaintiffs' suggestion lies beyond the reach of judicial interpretation of the statute.[5]

■■ Apart from these suggestions, the question whether a particular worker's employment at the jobsite to which he claims transportation expenses was "temporary" or "indefinite" within the standard adopted by the Commissioner of Internal Revenue is a question of fact to be determined by the department on the evidence in the individual case. Although ORS 316.032 directs the department to follow the "administrative and judicial interpretations of the federal income tax law," this does not extend to following the Internal Revenue Service's factual conclusion in a taxpayer's case; to the contrary, the section expressly reaffirms the "duty of the department * * * to determine any fact relating to the tax liability of any taxpayer."

---

[5] Special rules for constructions workers were in fact enacted in 1977, Or Laws 1977, ch 872, now ORS 316.057—316.059.

■  In these cases, Mr. Slegers was employed by Wright-Schuchart-Harbor Construction Company (WSH) in October, 1972, as a steamfitter on the construction of the Trojan plant. Slegers testified that at the time he took the job, he understood that the contractor would work about 16 months to complete the project on which he was employed, that the plant as a whole would not be completed until 1975, and that WSH had contracted for other portions of the plant that would require steamfitters. Slegers was in fact continuously employed at the Trojan site for three years.

Mr. Deblock was first employed at the Trojan site by WSH in August of 1971, laid off for a period, and rehired in the spring of 1972. His 1971 taxes are not involved in this case. He testified that his supervisor told him the Trojan plant was scheduled to be completed in 1974, that from his knowledge of construction delays it was impossible to predict how long one would remain employed on a project, and that he had no definite expectations in this regard. Deblock's employment at the construction site finally ended in late 1975.

On the evidence, both the Internal Revenue Service and defendant department determined that the taxpayers' employment was "indefinite" rather than temporary. The Oregon Tax Court affirmed. On the record of these two cases, we agree with the tax court's decision affirming defendant's orders.

Affirmed.