ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter comes before the court on cross-motions for summary judgment by Plaintiffs, Don A. and Patricia A. Austin (taxpayers), and Defendant, Department of Revenue (the department). The tax years at issue are 2002 and 2003. (Ptfs' Mot for Summ J at 1; Def's Cross-Mot for Summ J and Resp at 1 [hereinafter Def's Cross-Mot for Summ J].)
 II. STATEMENT OF FACTS
Taxpayer lives in Turner, Oregon, where he has lived since at least 1997.[1] (Stip Facts at 1, ¶ 1.) Taxpayer is a construction worker and has been employed by various construction businesses as a carpenter since at least 1997. (Id. at 1, ¶¶ 2-6.) Each of taxpayer's jobs lasted less than one year. (Id. at 3, ¶ 9; 4, ¶ 14.) Taxpayer prefers to work in the area where he lives. (Id. at 2, ¶ 7.) Taxpayer has requested that his employers assign work to him within that area, which his employers have done when possible. (Id.) However, the nature of the construction business of taxpayer's employers is such that jobs are widely dispersed over a broad area. (Id.) *Page 2 
The chart below shows the percentages of time taxpayer worked in Salem metropolitan area, [2] and other metropolitan areas[3] for years 1997 through 2003. (Def's Aff of Schweigert at 3-4; Stip Facts at 2-3, ¶ 8.)[4] In 2002 and 2003, taxpayer drove daily to each work location and drove to his home in Turner at the end of each day. (Stip Facts at 2, ¶ 8.)

 1997 1998 1999 2000 2001 2002 2003
 Salem
 metropolitan 30% 32% 0% 16% 71% 0% 25%
 area
 Other
 metropolitan 70% 68% 100% 84% 29% 100% 75%
 areas

For 2002 and 2003, the tax years at issue, taxpayers claimed a deduction for daily travel expenses for travel between taxpayer's home in Turner and temporary work locations outside of the Salem area. (Compl at 2; Def's Answer at 2.) The department denied those deductions. *Page 3 
(Compl, Ex A at 20, 24.) The department issued taxpayers a Notice of Assessment for the 2002 tax year on October 26, 2005, and on June 27, 2006 for the 2003 tax year. (Id.) Taxpayers appealed to the Magistrate Division. Austin v. Dept. of Rev., TC-MD No 060634C (Nov 21, 2007). The Magistrate Division denied taxpayers' appeal and taxpayers appealed to the Regular Division. (Compl at 1.) The assessed taxes, and interest for the years at issue have been paid. (Compl at 1; Def's Answer at 1.)
 III. ISSUE
May taxpayers deduct the traveling expenses for tax years 2002 and 2003?
 IV. ANALYSIS
On this question, Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis. See ORS 316.007; ORS 316.012(1).[5] Further, it is undisputed by the parties that the view of the Commissioner of Internal Revenue as to the legal analysis is dispositive. See id. In general, taxpayers are not allowed a deduction for personal or living expenses. IRC § 262(a).[6]
Treasury Regulation section 1.262-1(b)(5) provides, in relevant part:
 "The taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses."
Revenue Ruling 99-7 provides an exception to that general rule, stating:
 "A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary *Page 4 
work location outside the metropolitan area where the taxpayer lives and normally works. * * * [D]aily transportation expenses incurred in going between the taxpayer's residence and a temporary work location within that metropolitan area are nondeductible commuting expenses."
Rev Rul 99-7, 1999-1 CB 361 (emphasis in original). To allow taxpayers a deduction for daily traveling expenses, this court must find (1) that travel was to temporary work locations; (2) that taxpayer lived in a certain metropolitan area; and (3) that taxpayer "normally" worked in the metropolitan area that he lived. Id. The parties agree that taxpayer (1) traveled to temporary work locations; and (2) lived in the Salem metropolitan area. (See Stip Facts at 3, ¶ 9; Ptfs' Mot for Summ J at 4-5; Def's Cross-Mot for Summ J at 7.) The focus must be on whether taxpayer "normally" worked in the Salem metropolitan area.
A. "Normally"
Taxpayers must show that taxpayer "normally" worked in the Salem metropolitan area.[7] Taxpayers assert that to "normally" work in the metropolitan area that that taxpayer lived, taxpayer must have worked in the Salem metropolitan area somewhere between zero percent and 25 percent of the time, depending upon other circumstances. (See Ptfs' Mot for Summ J at 6-9.) One circumstance to which the taxpayers point is taxpayer's request to employers to work in Salem when work was available. (See Ptfs' Mot for Summ J at 8-9.) Taxpayers arrive at that percentage by citing calculations derived from cases where a deduction for travel expenses was granted, and reading in a "fairly low standard" from a case where the deduction was not granted. (Id. at 7-9.)[8] The department asserts that for taxpayer to "normally" work in the Salem *Page 5 
metropolitan area, he must work in the Salem metropolitan area more often than any other metropolitan area, citing synonyms for "normally." (Def's Cross-Mot for Summ J at 7.)
To determine the meaning of "normally" within Revenue Ruling 99-7, this court looks to federal interpretation of an undefined word because "[i]t is the intent of the Legislative Assembly * * * to make the Oregon personal income tax law identical in effect to the provisions of the federal Internal Revenue Code." ORS 316.007. When a federal statute is at issue, federal case law governs statutory interpretation. See Shaw v.PACC Health Plan, Inc., 322 Or 392, 400-02, 908 P2d 308 (1995); see alsoButler v. Dept. of Rev., 14 OTR 195, 199 (1997). In interpreting statutes, federal law dictates that unless otherwise defined, a term is given its ordinary meaning. BP America Prod. Co. v. Burton, 549 US 84,91-92, 127 S Ct 638, 166 L Ed 2d 494 (2006) (reviewing Black's LawDictionary definitions in interpreting a federal statute). The same analysis, beginning with the ordinary meaning, has been applied to the interpretation of an IRS Announcement. U.S. v. Wealth Tax AdvisoryServs., Inc., 526 F3d 528, 530-31 (9th Cir 2008) (reviewing Webster'sThird New International Dictionary and Black's Law Dictionary to determine the "plain meaning" in interpreting "memoranda" in Announcement 2002-2, 2002-1 CB 304). "Normally" is not defined in Revenue Ruling 99-7 or in prior revenue rulings. Therefore, this court considers the ordinary meaning of "normally." The meaning of "normally" is defined as "in a normal manner: to a normal degree" and [commonly, usually]: in normal circumstances: under normal conditions." Webster's Third New Int'lDictionary 1540 (unabridged ed 2002)). "Commonly" is defined "as a general thing: often in the usual course of events: [usually, ordinarily]: to a degree that is common[.]" Id. at 459. "Usually" is defined as "by or according to habit or custom: [habitually, customarily]" and "more often than not: most *Page 6 
often: as a rule: [ordinarily]." Id. at 2524. Black's Law Dictionary
defines "normally" "[a]s a rule; regularly; according to rule, general custom, etc." Id. at 1059 (6th ed 1990).
The definitions of "normally" do not include a specific numeric value creating a bright-line rule, nor do the definitions imply a threshold percentage, although "more often than not" suggests over 50 percent. Instead, the ordinary meaning of "normally" includes references to the "degree," the "circumstances," and "conditions," suggesting that the meaning of "normally" depends upon the facts at issue and not a bright-line rule or percentage. "Normally" is defined above as meaning "commonly" or "usually." See Webster's Third New Int'l Dictionary 1540. However, those words do not have the same meaning. "Commonly" is defined as "often in the usual course of events," but "usually" is defined as "more often than not[.]" Id. at 459, 2524. While these words appear to have different meanings, there are distinct similarities. Just as "normally" includes references to the "degree," the "circumstances," and "conditions," the definitions for "commonly" and "usually" include references to "habit," "custom," and "degree." None of these terms define a specific numeric value, but rather a case-by-case judgment considering the facts at issue.
In Daiz v. Commissioner, the U.S. Tax Court applied Revenue Ruling 94-47, the predecessor ruling to 99-7, which contained identical language to that in 99-7. 84 TCM (CCH) 148, WL 1796832 at *4-*5 (2002). In Daiz, the taxpayer was a nurse who "regularly" worked and maintained an apartment in the Stockton, California area. Id. at *1. The taxpayer did so for several years before her employer assigned her work at various locations outside of the Stockton area. Id. The taxpayer was assured by her employer that the assignments outside of the Stockton area were temporary and that she would be reassigned to work in the Stockton area.Id. The taxpayer claimed a deduction for travel expenses to those temporary work locations outside of *Page 7 
Stockton on her federal income tax return. Id. at *2. The Tax Court allowed the deduction stating that the taxpayer had met the requirements of Revenue Ruling 94-47. Id. at *5. The court stated:
 "[Taxpayer] had established her home near her place of employment and only accepted temporary assignments outside that area on the promise of reassignment within the Stockton area. * * * Under these circumstances, in our view throughout the year in issue [taxpayer] properly regarded the Stockton vicinity as the metropolitan area where she `lives and normally works.'"
Id. The Tax Court held that the taxpayer's traveling expenses were deductible. Id.
Case law applying the "normally works" requirement in Revenue Ruling 99-7, and its predecessor, Revenue Ruling 94-47, also suggests that "normally" does not include a specific numeric value. In Daiz, the court did not discuss a specific numeric value when deciding whether the taxpayer had "normally" worked in the Stockton area. See id. at *4-*5. Instead, the court discussed that the taxpayer had "regularly" worked in the Stockton area prior to the tax year at issue, while the taxpayer did not work at all in the Stockton area during the tax year at issue. Id. at *1. The court also considered that the taxpayer was assured by her employer that she would be reassigned to the Stockton area, where she "regularly" worked in prior years. Id. The facts in Daiz are distinguishable from that of taxpayer here. Taxpayer has not asserted that he was assured that he would "normally" work in the Salem metropolitan area. Taxpayer states that the nature of taxpayer's employers' construction business is that jobs would be "widely dispersed over a broad area[.]" (Stip Facts at 2, ¶ 7.) While the taxpayer inDaiz worked "regularly" in the Stockton area prior to the tax years at issue, taxpayer, here, in years prior to the tax years at issue worked "over a broad area." (Id.)
In this case, taxpayer's pattern in metropolitan areas changed from year to year, and in some cases to a radical degree. (See Stip Facts, Ex 3.) This suggests that taxpayer did not *Page 8 
"normally" work in the Salem metropolitan area. In years prior to, and including the tax years at issue, 1997 through 2003, taxpayer worked in the Salem metropolitan area in significantly varying amounts of time, and in two years, not at all.[9] (See id.) In 1997, taxpayer worked in the Salem metropolitan area 30 percent of the time; in 1998, 32 percent of the time; in 2000, 16 percent of the time; in 2001, 72 percent of the time; and in 1999 and in 2002, taxpayer did no work in the Salem metropolitan area. (See id.) Those significant variations show that taxpayer did not work in the Salem metropolitan area "usually," "commonly," or as a "general custom." Webster's at 1540; Black's at 1059. The chart below displays the significance of those variations.[10]

Taxpayers respond that the average percentage of time worked in the Salem metropolitan area over a longer period should be considered. (Ptfs' Mot for Summ J at 10.) Taxpayers assert that from 1997 to 2006, taxpayer worked in the Salem metropolitan area on average somewhere between 21.12 percent and 29.65 percent of the time, depending on what areas are included in *Page 9 
the Salem metropolitan area. (Id. at 14.)[11] However, the ordinary meaning of "normally" and the case law applying the "normally works" requirement suggest no such average as to the analytical test. SeeWebster's at 1540; see also Daiz, 84 TCM (CCH) 148, WL 1796832 at *4-*5. The court declines to apply such an average or specific numeric value when none has been created by federal law. Rather, a review of year by year statistics is needed, following which a qualitative judgment must be reached. Here, the court concludes that taxpayer did not "normally" work in the Salem metropolitan area.[12]
B. No special exception for construction workers
Taxpayers assert that due to the temporary nature and broad geographic range of construction work, taxpayer chose to live in Turner as a business decision because Turner is within the broad area in which that work was likely to be located. (Ptfs' Mot for Summ J at 8.) However, the general rule of IRC section 262(a) is that commuting expenses are personal and are not deductible business expenses. This general rule has been held to apply to a taxpayer even when "necessity rather than preference," affects a taxpayer's choice of where to live. See Deblock v.Dept. of Rev., 286 Or 735, 739, 596 P2d 560 (1979) (citing Sanders v.Commisioner, 439 F2d 296, 299 (9th Cir), cert den 404 US 864 (1971)).
In Aldea v. Commissioner, the U.S. Tax Court ruled on a similar case applying the "normally" works requirement as set out in Revenue Ruling 94-47 and Revenue Ruling 99-7. *Page 10 
79 TCM (CCH) 1917, WL 371549 (2000). In Aldea, the taxpayer was an apprentice ironworker who argued that "the temporary nature of her employment [was] sufficient in and of itself to entitle her to deductions for commuting expenses." Id. at *3. The Tax Court held that the taxpayer was properly denied the deduction because taxpayer did not "ordinarily work in the metropolitan area in which she lives." Id. at *3-*4.
Taxpayers state that taxpayer knew that the nature of construction work was such that "he would be required to travel considerable distances to an unending succession of temporary job sites." (Ptfs' Mot for Summ J at 8.) Despite any necessity, however, because taxpayer does not "normally" work in the metropolitan area where he lives, taxpayer is not allowed a deduction because of the temporary nature of his work. Here, as in Aldea, there is no special exception to IRC section 262(a) that allows a deduction for traveling expenses to construction workers who travel to temporary work locations, even if necessity requires taxpayer travel a considerable distance each day.
 V. CONCLUSION
For the reasons stated above, the court concludes that taxpayer did not "normally" work in the Salem metropolitan area and taxpayers were, therefore, properly denied travel expenses to taxpayer's temporary work locations for tax years 2002 and 2003. Now, therefore,
IT IS ORDERED that the Plaintiffs' Motion for Summary Judgment is denied and Defendant's Cross-Motion for Summary Judgment is granted.
Dated this ___ day of October, 2009. *Page 11 
 THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPT ON OCTOBER 20,2009, AND FILED THE SAME DAY. THIS IS A PUBLISHED DOCUMENT.
[1] While there are two taxpayers in this case, in the singular, the court refers to Don A. Austin because his travel expenses are at issue.
[2] The percentages for the Salem metropolitan area include locations that the parties have agreed are in the Salem metropolitan area for purposes of this case. Those locations are Salem, Silverton, and Woodburn. (Ptfs' Mot for Summ J at 13; Def's Cross-Mot for Summ J at 18.) Taxpayers argue that Corvallis and Newberg may also be included in the Salem metropolitan area. (Ptfs' Mot for Summ J at 13.) The court finds that Corvallis and Newberg are not included in the Salem metropolitan area. However, even if Corvallis and Newberg are included, the analysis does not change. If Corvallis and Newberg are included in the Salem metropolitan area, the percentage of time taxpayer worked in the Salem metropolitan area increases to 77% of the time in 1997, but does not change for years 1998 to 2003. (Def's Aff of Schweigert at 3; Stip Facts at 2-3, ¶ 8.)
[3] Locations included in other metropolitan areas that taxpayer worked are Beaverton, Clackamas, Corvallis, The Dalles, Eugene, Grand Ronde, Gresham, Hillsboro, La Grande, Lake Oswego, Lincoln City, Newberg, Portland, Tigard, Tillamook, Tualatin, Vancouver, and Wilsonville. (Def's Aff of Schweigert; Stip Facts at 3; Stip Facts, Ex 3 at 19-26.)
[4] The affidavit of Allen Schweigert states that the percentages listed are based on Exhibit 3 of the Stipulation of Facts. (Def's Aff of Schweigert at 3.) The location and payroll period entries for taxpayer's construction jobs during 1997 through 2001 are accurately identified in Exhibit 3. (Stip Facts at 4, ¶ 14.) For each payroll period end date, Exhibit 3 shows the locations and number of hours ("units") worked at each job site during such period. (Id.) The percentages for 1997 through 2001 are derived by dividing the number of hours worked in each location in a given year by the total number of hours worked during the year. (See Aff of Schweigert at 3-5; Stip Facts at 4; Stip Facts, Ex 3.) Taxpayers do not refute the percentages derived in the affidavit of Allen Schweigert. The court notes a slight difference in calculation of percentage worked in the Salem metropolitan area for 1999 because Wilsonville was reported as Woodburn in the affidavit of Allen Schweigert. There is also a slight difference in the calculation of the court for 2001 as compared to the affidavit of Allen Schweigert, which appears to be due to a computing error in the affidavit. The percentages for 2002 and 2003 are derived by dividing the days in each location by the total number of days worked during each year. (See Stip Facts at 3.)
[5] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2001 edition.
[6] Under ORS 316.012(1), the court looks to the version of the IRC in effect for the tax years at issue. In this case, the court then looks to 2002 and 2003. The citation above is accurate in both the 2002 and 2003 versions of the IRC.
[7] Taxpayers bear the burden of proof as the parties seeking affirmative relief. ORS 305.427 (2007).
[8] Taxpayers cite as authority Aldea v. Commissioner, 79 TCM (CCH) 1917, WL 371549 (2000), Dean v. Commissioner, 54 TC 663 (1970), and Kohrv. U.S., 655 F Supp 306, 87-1 US Tax Cas (CCH) ¶ 9724 (M D Pa 1987).
[9] Taxpayers argue that the years subsequent to the tax years at issue should be considered. (Ptfs' Mot for Summ J at 10.) However, the court does not find it appropriate to consider subsequent years in determining whether taxpayer "normally" worked in a metropolitan area during the tax years at issue.
[10] The percentages included on the graph are those listed in the statement of facts. See supra notes 2-4.
[11] Taxpayers include Salem, Corvallis, Silverton, and Woodburn in the Salem metropolitan area in calculating 29.65 percent. (Ptfs' Mot for Summ J at 14.) Taxpayers state that if Corvallis, Silverton, and Woodburn are excluded, the resulting percentage is 21.12 percent. (Id.) Taxpayers seek to include analysis of years following the years at issue. See supra note 9.
[12] The court might reach a different result if the percentage of time worked in an area was within a relatively narrow band from year to year and in all years was much closer to 50 percent. *Page 1