IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| NANCY E. TONKIN-ZOUCHA | ) | |
| and NATHAN R. ZOUCHA, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 190022G |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

This case is ready for decision after trial on the issue of the deductibility of a real estate broker's travel expenses. Preston Byrd, CPA, appeared on behalf of Plaintiffs, and Plaintiff Nathan Zoucha testified. Alexander Anderson, Audit Unit, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 4 and Defendant's Exhibits A to N were admitted.

## I. STATEMENT OF FACTS

Mr. Zoucha is a broker specializing in helping technology companies meet their needs for what he terms the "necessary evil" of office space. (Exs F, G, H.) Most of his clients are headquartered in the San Francisco Bay Area. They need space all over the world, so he practices globally: more than half the transactions he oversaw in 2014 involved properties in Asia; others involved properties in San Francisco, Mesa, Houston, and Ottawa. (Ex 2 at 3.)

Mr. Zoucha grew up in Portland and began his career there in 1999 after attending the University of Oregon. In 2002, he moved to San Francisco and began working at a major real estate firm. He moved back to Oregon in 2010 for personal reasons, retaining his clients and his California broker's license. He did not renew his Oregon broker's license because he was able to earn more working from his firm's San Francisco office. Because he oversees transactions in

multiple jurisdictions, he follows a process of identifying and evaluating local brokers with whom to partner when assisting clients with real estate transactions outside of California.

Various sources connect Mr. Zoucha's practice with San Francisco. In 2013, CoStar designated him one of the "Top Industrial Leasing Brokers" in San Francisco. (Ex I.) In a Twitter profile last updated in 2015, he described himself as "help[ing] technology companies find awesome office space in San Francisco and around the world." (Ex H.) As of December 2017, his new firm's web page described him as "having moved his real estate practice to San Francisco in 2002." (Ex F.) At that time, his LinkedIn profile described Mr. Zoucha's firm as "the only commercial real estate firm in San Francisco (in the world) focused entirely on helping technology companies with their office space needs[.]" (Ex G.)

Mr. Zoucha works at his home office in Portland and meets regularly with his clients in San Francisco. His records show he took 21 trips to the Bay Area in 2014, generally spending two or three days on each trip.[1] (Ex 2 at 2.) By his tally, he spent 49 work days in San Francisco and 116 work days in Portland between May and December—30 percent and 70 percent of his time, respectively. (*Id*.) Of thirteen completed transactions in 2014, two involved Bay Area properties. (*Id*. at 3.) Those two transactions account for 68 percent of the commission Mr. Zoucha earned that year. (*See id*.)

The Form 1099-MISC issued to Mr. Zoucha by his firm for 2014 reported all of his income as California income. (Ex E.) Plaintiffs filed a 2014 California nonresident return reporting all of Mr. Zoucha's Schedule C net profit (less California subtractions) as California source income. (Ex A at 5, 56.)

/ / /

---

[1] Full itineraries for all trips are not available because seven flights were redacted from the records.

Defendant made a few adjustments to Plaintiffs' 2014 return, of which only Defendant's disallowance of Schedule C deductions for Mr. Zoucha's travel expenses is at issue here. Plaintiffs ask the court to find that Portland was Mr. Zoucha's tax home and to allow his travel expenses to San Francisco. Defendant asks the court to uphold its adjustments.

## II. ANALYSIS

The issue for decision is whether Mr. Zoucha's expenses for traveling between Portland and San Francisco were deductible business expenses under section 162(a) of the Internal Revenue Code (IRC). The IRC is relevant because, subject to modifications not pertinent here, Oregon has adopted its definition of taxable income. ORS 316.022(6); 316.048.[2] Because Plaintiffs ask the court to change the tax assessment, they must bear the burden of proof on all factual questions. ORS 305.427.

IRC section 162(a) allows a deduction for business expenses, including traveling expenses incurred "while away from home in the pursuit of a trade or business[.]" As used in section 162(a), the term *home* is read as having a special sense and is commonly referred to as "tax home." Generally, one's tax home is one's "principal place of business or employment." *Morey v. Dept. of Rev.*, 18 OTR 76, 81 (2004). The theory is that expenses due to a taxpayer's personal choice to live far away from work are not business expenses:

> "Congress did not intend to allow as a business expense those outlays that are not caused by the exigencies of the business but by the action of the taxpayer in having a home, for the taxpayer's convenience, at a distance from the business. Such expenditures are not essential for the conduct of the business and were not within the contemplation of Congress, which proceeded on the assumption that a person engaged in business would live within reasonable proximity of the business."

Rev Rul 75-432, 1975-2 CB 60 (1975); *cf. Comm'r v. Flowers*, 326 US 465, 473–74, 66 S Ct

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

250, 90 L Ed 203 (1946) (holding railroad lawyer's expenses for travel between Jackson and railroad headquarters in Mobile "were incurred solely as the result of the taxpayer's desire to maintain a home in Jackson while working in Mobile, a factor irrelevant to the maintenance and prosecution of the railroad's legal business"). Only travel away from a taxpayer's tax home is "away from home" for purposes of IRC section 162(a).

Where a taxpayer has more than one place of business—specifically, where the taxpayer earns income while staying overnight at multiple locations—the question arises which location is the "principal" place of business. The federal Courts of Appeal have not been unanimous on how to decide that question. In *Morey*, this court identified three legal standards in use by the various circuits, but did not determine which of those standards was controlling in Oregon. 18 OTR at 82–87. The court identified the three standards as the " 'reasonable probability' standard," the "three-part objective standard," and the " 'objective foreseeability' standard." *Id*.

The "three-part objective standard" identified by the *Morey* court consists of weighing three factors: (1) the length of time spent by the taxpayer in each location, (2) the degree of the taxpayer's business activity in each location, and (3) the relative proportion of the taxpayer's income derived from each location. *Morey*, 18 OTR at 84–85 (citing *Folkman v. United States*, 615 F2d 493, 496 (9th Cir 1980)). Those three factors were adopted by the *Folkman* court from a Sixth Circuit case, *Markey v. Comm'r*, 490 F2d 1249, 1255 (6th Cir 1974), and were first stated, with a slight variation of the third factor, in Revenue Ruling 54–147, 1954–1 CB 51.[3] The IRS continues to apply the three factors announced in Revenue Ruling 54–147 in its

///

---

[3] The IRS ruled that the "more important factors to be considered" in determining the principal places of business of professional baseball personnel are the time spent at each post, the degree of business activity at each post, and "whether the financial return in respect of each post is significant or insignificant." Rev Rul 54–147.

information letters and chief counsel advisories. *See*, *e.g.*, IRS INFO 2005-0015 (Mar 31, 2005); IRS CCA 200242038 (Oct 18, 2002).

Where federal courts disagree about a provision of the federal income tax law, Defendant is required to "follow the rule observed by the United States Commissioner of Internal Revenue until the conflict is resolved." ORS 316.032(2). Our Supreme Court has opined that this shows "the legislature cared more about trying to maintain parallel rules of tax administration in practice than about policing the commissioner's interpretation of the federal tax laws when the correct interpretation had not been settled by federal courts." *Deblock v. Dept. of Rev.*, 286 Or 735, 741, 596 P2d 560 (1979).

Given disagreement among the federal courts on how to determine a taxpayer's principal place of business, Revenue Ruling 54–147 states the rule to which Defendant is held. *See* ORS 316.032(2). As neither party identified or argued for any other standard, the court's analysis will follow those three factors. *Cf. Roy v. Dept. of Rev.*, TC–MD 180053N, WL 4678940 (Or Tax M Div Sept 25, 2018) (concluding IRS followed three-part objective standard and applying it where parties did not litigate question). Nevertheless, the three factors are not a mechanical test; they are evidence relevant to a qualitative determination.

Mr. Zoucha worked and stayed overnight in both Portland and San Francisco. Plaintiffs argue Portland was his principal place of business because he spent more time there, because he worked more hours there, and because the commissions he earned were compensation for all his work, irrespective of where he did it. On the other hand, Defendant argues San Francisco was his principal place of business because Mr. Zoucha marketed himself as a San Francisco broker, regularly traveled there, and received the majority of his income from Bay Area transactions.

/ / /

The first factor—the length of time spent at each location—is less relevant here than it might be in a case where a taxpayer was compensated for work done for a particular length of time at a particular place. Mr. Zoucha worked on commission; his compensation was not tied to the hours he worked in Portland or San Francisco. His real estate practice was conducted mostly via telephone and Internet, and he did not identify any business reason for working from Portland rather than elsewhere. He admittedly moved to Portland for personal reasons. Under those facts, his time spent working in Portland is not conclusive of where his tax home is.

By the same token, the location of the transactions that generated the most income for him is not highly relevant. Mr. Zoucha did not act personally as a broker in the jurisdictions where most of his clients' transactions occurred, and the evidence does not indicate that he made any special effort to broker property in the Bay Area. There is no evidence, for instance, that he served as listing broker for any of the properties his clients bought or leased. He served the needs of his clients, and those needs were frequently global. On most of his transactions, his job involved acting as a liaison between his clients and brokers in a variety of locales.

The more relevant factor here is the "degree" of work performed in each city. The court understands that factor as referring to the degree of importance to the overall business activity of the work done in the various locations. Understanding the factor in that way accords with the U.S. Supreme Court's equation of "principal place of business" with "most important or significant place for the business" for purposes of IRC section 280A(c)(1)(A).[4] *See Commissioner v. Soliman*, 506 US 168, 174, 113 S Ct 701, 121 L Ed 2d 634 (1993).

---

[4] Overlap in the definition of "principal place of business" as used in IRC 162(a) and 280A is plausible not only as a matter of ordinary language, but also due to the interrelation between the two statutes, as noted in General Counsel Memorandum 38328, 1980 WL 131382: ""[T]hese two sections complement each other in a hand-in-glove fashion, and we think it would be very difficult, if not impossible, absent specific legislation to the contrary, to have inconsistent interpretations of the term 'principal place of business' for purposes of sections 162(a) and 280A."

In *Strohmaier v. Comm'r*, 113 TC 106 (1999), the U.S. Tax Court compared the relative importance of an insurance broker's client meetings to his preparatory work at home for purposes of determining his principal place of business under IRC section 280A(c)(1)(A). Under the relevant test for that statute, the "delivery point or facility" of a good or service is a weighty consideration in determining where a business's most important functions are undertaken. *Soliman*, 506 US at 176. Although the taxpayer in *Strohmaier* claimed to have performed "virtually all" his work at home and to have visited customers only to "close the deal," the court found that his home was not his principal place of business, explaining:

> "[T]he visit by petitioner to each customer to close a transaction represented the most important function of petitioner's activity because, no matter how much preparatory work was done by petitioner at home, none of this work was of any value unless the customer agreed to buy the insurance proposed by petitioner."

*Strohmaier*, 113 TC at 112–13. The broker's most important business activity was visiting customers because those visits were "where the transaction with such customer was consummated." *Id*.

Although Mr. Zoucha oversaw transactions around the world, the common denominator in most of them was a client in San Francisco. The evidence indicates that his firm and the majority of his clients were headquartered there, and that it was necessary for him to hold face-to-face meetings there. Mr. Zoucha's presence in San Francisco was deliberate; he and his firm marketed themselves especially to technology companies in the Bay Area, and he maintained his California broker's license. Those face-to-face meetings constituted a minority of his time spent working, but their importance is shown by the time and trouble he took traveling to San Francisco. As with the broker in *Strohmaier*, Mr. Zoucha was paid only when his clients completed a transaction. The work he performed at home was for the purpose of assisting his

/ / /

clients in doing so. His meetings with those clients were the points in time when he had direct contact with the ones on whose decisions his income depended.

The evidence indicates Mr. Zoucha had a business reason to spend 49 days in San Francisco; that was where his clients were. It does not indicate he had a business reason to spend any days in Portland. Mr. Zoucha lived in Portland for personal reasons and worked in Portland because he lived there. The work he did from home could have been done anywhere, and he could have saved on travel expenses (if not on living expenses) by living in the same area as his clients. Mr. Zoucha's choice to live in Portland was "irrelevant to the maintenance and prosecution" of his work as a real estate broker. *Cf. Flowers*, 326 US at 473. Accordingly, the court finds Mr. Zoucha's tax home was in San Francisco, not Portland.

### III.  CONCLUSION

Because Mr. Zoucha's tax home was in San Francisco, he was not "away from home in pursuit of a trade or business" while traveling there, and his expenses are not deductible under IRC section 162(a). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of March, 2020.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on March 10, 2020.*