Penny GROSZ–SALOMON, Plaintiff–
Appellee–Cross–Appellant,

v.

PAUL REVERE LIFE INSURANCE COMPANY, a Provident company, Defendant–Appellant–Cross–Appellee.

Nos. 99–55812, 99–55960.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2000

Filed Jan. 29, 2001

Edwin A. Oster and Robert R. Renner, Barger & Wolen LLP, Irvine, California for defendant-appellant/cross-appellee The Paul Revere Life Insurance Company.

Elizabeth R. Lishner, Santa Monica, California, for plaintiff-appellee/cross-appellant Penny Grosz–Salomon.

Before: T.G. NELSON and W. FLETCHER, Circuit Judges, and REED,[1] District Judge.

T.G. NELSON, Circuit Judge:

This case requires us to decide whether the district court properly reviewed Paul Revere Life Insurance Company's decision to terminate Penny Grosz–Salomon's disability insurance benefits for an abuse of discretion, and if so, whether the court's determination that Paul Revere abused that discretion in denying benefits withstands scrutiny. For the reasons explained below, we hold that the district court erred in applying the abuse of discretion rather than de novo standard of review. However, because this error inured exclusively to Grosz–Salomon's detriment and she nonetheless prevailed, we affirm.

I

In August 1992, the law firm of Reznik & Reznik ("Reznik") purchased a long-term disability policy for its employees from Paul Revere Life Insurance Company ("Paul Revere"). Immediately thereafter, Reznik distributed to its employees a Benefit Summary that it had received from Paul Revere.[2] About a year later, in October 1993, Paul Revere contacted Reznik's managing partner, Alan Kheel, and informed him that a Retirement Security Benefit ("RSB") had inadvertently been included in Reznik's policy. In order to correct that error, Paul Revere presented Kheel with a policy amendment, which Kheel signed. Paul Revere then supplied Reznik with a revised Benefit Summary, which Reznik again distributed. Unlike its predecessor, the revised Benefit Summary contained a paragraph giving Paul Revere "full, final, conclusive and binding power to construe and interpret the policy ... in order to make claims determinations."

Kheel did not execute an amendment authorizing this change.

Between the original issuance of the policy and the execution of the October 1993 amendment to remove the RSB, one of Reznik's attorneys became disabled. Penny Grosz–Salomon, a senior trial attorney,[3] filed a claim on September 1, 1993, after pregnancy complications began interfering with her work. Grosz–Salomon's complications worsened as her pregnancy progressed, and after her daughter's birth, doctors discovered Grosz–Salomon had two herniated disks in her lower back. Grosz–Salomon notified Paul Revere of her back condition, which she claimed caused severe pain and numbness and prevented her from walking, sitting, or standing for prolonged periods of time. Reports from three doctors buttressed her claim.

Following the requisite ninety-day elimination period, Paul Revere accepted Grosz–Salomon's claim for long-term disability benefits and began paying her $9,917 per month. Soon after, Paul Revere initiated an investigation of whether Grosz–Salomon was disabled under the plan. As part of this investigation, it intermittently sent a field representative to interview Grosz–Salomon and required her to submit to an independent medical examination ("IME") and a functional capacity evaluation ("FCE"). The doctor who performed the 1995 IME concluded that Grosz–Salomon was "temporarily totally disabled," while the occupational therapists who performed the 1997 FCE recommended that Grosz–Salomon "[r]eview options for returning to [the] legal profession as a corporate lawyer ..., insurance lawyer or a less demanding area of law that would not need as much handling of materials ..., prolonged sit-standing ..., and working greater than 8–9 hours as in trial work."

1. The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

2. The Benefit Summary functions as a "Summary Plan Description" for the purposes of ERISA.

3. Grosz–Salomon regularly billed over 2,000 hours a year and spent about forty-five days in trial for each of the three years leading up to her injury.

Between 1995 and 1997, Paul Revere surreptitiously videotaped Grosz–Salomon on several occasions. Upon viewing this videotape, Paul Revere's Associate Medical Director concluded that Grosz–Salomon "does *not* have an impairment that would preclude the duties of a lawyer." Another of its medical consultants opined that Grosz–Salomon "could perform her occ[upation] *at least* part time *now*, and shortly work up to *full time*." Neither of these two doctors, however, examined Grosz–Salomon, and neither opined that she could function full-time as a *trial* lawyer.

In December 1997, Paul Revere concluded that Grosz–Salomon was not disabled within the meaning of Reznik's policy and wrote to inform her of this decision. Although Paul Revere now admits that this decision was based in part on its two in-house doctors' "medical consultations," it did not advise Grosz–Salomon of this fact at the time. Indeed, Paul Revere did not produce the records of these consultations until sometime after August 1998, when its final denial of Grosz–Salomon's claim prompted her to file suit.

The district court granted summary judgment for Grosz–Salomon. The court did not resolve whether the amended Benefit Summary language controlled because the court concluded that even if it did not, the abuse of discretion standard of review applied. The court found that Paul Revere's denial of Grosz–Salomon's claim constituted such an abuse of discretion. Accordingly, it ordered Paul Revere to pay damages and reinstate Grosz–Salomon's benefits effective January 1, 1998.

In denying Paul Revere's subsequent motion to stay execution of the judgment pending appeal, the district court acknowledged that under *Kearney v. Standard Insurance Co.*,[4] a Ninth Circuit case that postdated its judgment, it should not, in fact, have applied abuse of discretion review. Rather, de novo review was appropriate. The court found that its error was harmless, however, because even under the stricter standard, Grosz–Salomon showed that Paul Revere violated the plan's terms in denying her benefits. Paul Revere appeals, and Grosz–Salomon cross-appeals.

We review de novo both the district court's application of the standard of review in an ERISA case and its conclusion that the ERISA plan administrator abused its discretion.[5]

## II

*Firestone Tire & Rubber Co. v. Bruch*[6] instructs courts to review an ERISA plan administrator's benefits determination de novo "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case abuse of discretion review applies.[7] Here the original plan lacks such discretionary language. It simply states that Paul Revere "ha[s] the right to require written proof of financial loss" and that "[p]ayment of benefits may be contingent upon receipt of satisfactory proof of financial loss." Although this court once considered such a statement sufficient to confer discretion,[8] it is clear that it no longer does so.[9] The revised Benefit Summary,

4. 175 F.3d 1084 (9th Cir.1999) (en banc).

5. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir.1996).

6. 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

7. *Id.* at 115, 109 S.Ct. 948.

8. *See, e.g., Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996).

9. *See Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1203–04 (9th Cir.2000) (language requiring a plan participant to "submit satisfactory proof of total disability" does not confer discretion); *Kearney*, 175 F.3d at 1090 (policy providing that insurer will pay "upon receipt of satisfactory written proof that you have become disabled" did not confer discretion). We note, too, that in *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533 (7th Cir. 2000), the Seventh Circuit analyzed a Paul Revere disability insurance policy containing language nearly identical to that contained in

however, indisputably does confer discretion. It states that Paul Revere "has the full, final, conclusive and binding power to construe and interpret the policy under the plan ... to make claims determinations." Thus, to decide which standard of review applies, we must first decide which version of the plan governs.

### A. Which Plan Applies?

■ No circuit has yet addressed which policy dictates the standard of review when an insured files her claim under a non-discretionary policy but is subsequently denied benefits under an amended regime. Only the Southern District of Iowa has considered this precise question. The plaintiff in *Blessing v. Deere & Co.*[10] was the common-law wife of a deceased John Deere employee. She applied for and was denied spousal benefits under her husband's pension plan. It was undisputed that the plan in effect when Mrs. Blessing's husband died did not give the plan's administrator discretionary authority to determine eligibility or construe the plan's terms, while the plan in effect when she applied for and was denied surviving spouse benefits did.[11] Thus, there, as here, the court had to decide which plan governed to decide which standard of review to apply.

■ The court decided that the second plan applied. Consistent with this circuit's precedent, it noted that "an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied."[12] It relied heavily on *Podolan v. Aetna Life Insurance Co.*,[13] a district court case from the District of Idaho. *Podolan*'s facts are even closer to the instant case. Podolan became disabled in 1981, and Aetna approved her application for long-term disability benefits in 1982. She received those benefits until 1993, when Aetna canceled them. The policy in place in 1981 did not confer discretion, while the policy in place in 1993 did.

The court concluded that the second plan, the 1988 plan, applied:[14]

> The instant action focuses on whether or not the Plan administrator acted improperly in terminating benefits to Plaintiff in 1993. It was in 1993 that the claim for wrongful termination of benefits arose and it is the Plan administrator's acts in 1993 that are being reviewed by the Court. Therefore, the Court concludes that it is the 1988 Plan governing the administrator's conduct in 1993 that must be considered in determining the scope of review over the administrator's decisions.[15]

---

Reznik's original policy. It concluded that the language was insufficient to confer discretion and that de novo review therefore applied. *Id.* at 540.

**10.** 985 F.Supp. 899 (S.D.Iowa 1997).

**11.** *Id.* at 902.

**12.** *Id.* at 903; *accord Bolton v. Construction Laborers' Pension Trust for So. Cal.,* 56 F.3d 1055, 1058 (9th Cir.1995) (holding that under ERISA, a widow's cause of action for spousal benefits accrued when she was denied those benefits); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1501 (9th Cir.1984) (pensioner's ERISA cause of action arose when he applied for and was denied benefits).

**13.** 909 F.Supp. 1378 (D.Idaho 1995).

**14.** Podolan had argued that a 1981 plan should govern whether or not the plan admin-

istrator had discretion to interpret the plan since that was the plan in place when her benefits accrued. *Id.* at 1384.

**15.** *Id.* In *Podolan v. Aetna Life Ins. Co.,* 107 F.3d 17, 1997 WL 51667 (9th Cir.1997), we affirmed the district court in an unpublished memorandum disposition that noted that the district court's threshold determination was unnecessary because, under the then-prevailing law, even the language in the first policy sufficed to confer discretion on Aetna. *Id.* at *2 ("Podolan incorrectly assumes that the plan in effect at the time she became disabled did not provide Aetna with the requisite discretionary authority.... [T]herefore, Aetna's decision must be reviewed under the abuse of discretion standard."). That *Podolan*'s reasoning may have been unnecessary does not render it unpersuasive. We adopt it here.

*Blessing* and *Podolan* focus on when the plan administrator denied the claim rather than on when the claimant filed it, or when the event triggering coverage occurred. In *Chiles v. Ceridian Corp.,*[16] the Tenth Circuit justified this temporal focus by reference to the nature of the plan. It explained that "ERISA distinguishes between ... welfare benefits and pension benefits," and that the former, unlike the latter, "need never vest."[17] Because of this, "[a]n employer ... may unilaterally modify or terminate welfare benefits, unless it contractually agrees to grant vested benefits."[18] Contractual vesting of a welfare benefit, moreover, "is an extra-ERISA commitment that must be stated in clear and express language."[19]

In *McGann v. H & H Music Co.,*[20] the Fifth Circuit made the malleability of welfare benefit plans brutally clear. When McGann was diagnosed with AIDS, and when he made his first claims against his employer's welfare benefit plan, the plan provided lifetime medical benefits of up to $1,000,000 per employee. Shortly thereafter, H & H changed the plan to limit benefits payable for AIDS-related claims to a lifetime maximum of $5,000.[21] The court found no cause of action: "The continued availability of the $1,000,000 limit was not a right to which McGann may have become entitled for the purposes of

[ERISA]" because "ERISA does not require ... vesting of the right to a continued level of the same medical benefits once those are ever included in a welfare plan."[22] Under similar circumstances, the Eleventh Circuit came to the same conclusion.[23] Simply put, an employee's rights under an ERISA welfare benefit plan do not vest unless and until the employer says they do.[24]

Nothing in Reznik's policy with Paul Revere assured employees that their rights were vested. On the contrary, the policy provided that Paul Revere could change the group policy upon written request from the policyholder and that the insured's consent was not needed to make a policy change. Thus, Grosz–Salomon is no more entitled to invoke the terms of the plan in place when her injury occurred than were Blessing, Podolan or McGann. That she became permanently disabled and filed her disability claim while the first policy was in effect is irrelevant; it does not entitle her to invoke that plan's provisions in perpetuity.[25]

Because no employees' rights were vested, Reznik was at liberty to change its long-term disability plan. It did so in October 1993. Because Grosz–Salomon's cause of action accrued several years later, in December 1997, this court must look to

---

16. 95 F.3d 1505 (10th Cir.1996).

17. *Id.* at 1510; *accord Owens v. Storehouse, Inc.,* 984 F.2d 394, 397–98 (11th Cir.1993) ("ERISA does not prohibit a company from terminating previously offered benefits that are neither vested nor accrued. Unlike pension benefits, welfare benefit plans neither vest nor accrue." (internal citation omitted)); *McGann v. H & H Music Co.,* 946 F.2d 401, 405 (5th Cir.1991) ("ERISA does not require ... 'vesting' of the right to a continued level of the same medical benefits once those are ever included in a welfare plan.").

18. *Chiles,* 95 F.3d at 1510.

19. *Id.* at 1513 (internal quotation omitted).

20. 946 F.2d 401 (5th Cir.1991).

21. *Id.* at 403.

22. *Id.* at 405 (internal quotation omitted).

23. *See Owens,* 984 F.2d at 397, 400 (employee's right to $1 million in lifetime health benefits was not vested, and thus, employer could reduce that benefit to $25,000 even after employee contracted AIDS).

24. *See Deboard v. Sunshine Mining and Refining Co.,* 208 F.3d 1228, 1239–40 (10th Cir. 2000) (observing that employers are free to amend or terminate ERISA welfare benefit plans unilaterally unless employees have bargained for contractually vested rights, and whether these rights exist is determined by application of general principles of contract).

25. *See Chiles,* 95 F.3d at 1511 (concluding that health benefits do not vest in the face of a reserved modification clause once the employee qualifies for disability status).

the revised plan to determine the appropriate standard of review.[26]

## B. *Is the Revised Benefit Summary Provision Valid?*

■ The second Benefit Summary contains one paragraph the original Benefit Summary did not. That paragraph states:

> The Paul Revere Life Insurance Company, as the Claims Administrator, has the full, final, conclusive and binding power to construe and interpret the policy under the plan as may be necessary in order to make claims determinations. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious or unless there is no rational basis for a decision.

This provision clearly suffices to confer discretion.[27] The question, though, is whether it is valid. For two reasons, we hold that it is not.

■ First, the actual policy between Paul Revere and Reznik purports to be fully integrated. The policy provides that "[t]his policy and any application made by the policyholder or by an employee make up the entire contract between the parties." Plainly this provision was intended to keep insureds like Grosz–Salomon from binding Paul Revere to promises made in extraneous documents like the Benefit Summary.[28] But "what is sauce for the gander must be sauce for the goose:"[29] if Grosz–Salomon cannot invoke Benefit Summary provisions against Paul Revere, then Paul Revere cannot invoke Benefit Summary provisions against Grosz–Salomon.

It is true that "an integration clause in the written agreement is not necessarily conclusive as to the parties' intent to include their entire agreement in the writing."[30] Thus, some contracts that purport to be fully integrated may not in fact be so. If that were the case here, however, Paul Revere would still be unable to rely on the new Benefit Summary provision, for if the Benefit Summary forms part of the policy, it must be amended in conformance with policy provisions.[31] Here it was not.

Reznik's policy with Paul Revere provides that:

> We [Paul Revere] may change this Policy if we receive a written request from the policyholder. *All changes that are made are stated in riders or amendments to this Policy.* These documents must be signed by both our President or Secretary and the policyholder.[32]

It is undisputed that no one asked Paul Revere to insert the discretionary language in the revised Benefit Summary. This language, moreover, does not appear in any rider or amendment to the policy. The only amendment ever executed pertains exclusively to the Retirement Security Benefit (RSB). After Reznik's managing partner signed it, Paul Revere prepared a new Benefit Summary for the firm and inserted the discretion-

**26.** See *Bolton,* 56 F.3d at 1058; *Podolan,* 909 F.Supp. at 1384.

**27.** See generally *McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1107 (9th Cir.2000); *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 943 (9th Cir.1999).

**28.** See, e.g., *Pace v. Honolulu Disposal Serv., Inc.,* 227 F.3d 1150, 1159 (9th Cir.2000) (noting that "zipper" clauses, which combine integration and no-oral-modification clauses, "[are] intended to foreclose claims of any representations outside the written contract aside from those made in another written document executed by the parties").

**29.** *Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc. v. Multistate Legal Studies, Inc.,* 26 F.3d 948, 952 (9th Cir.1994).

**30.** *Enrico Farms, Inc. v. H.J. Heinz Co.,* 629 F.2d 1304, 1306 (9th Cir.1980).

**31.** *White v. Jacobs Eng'g Group Long Term Disability Benefit Plan,* 896 F.2d 344, 348 (9th Cir.1989) (holding that "a provision in the summary plan description can establish a new plan term if it meets all the statutory, regulatory, *and plan requirements* for modifying the plan") (emphasis added).

**32.** (Emphasis added.) This language also appears in the original Benefit Summary that was distributed to Grosz–Salomon.

ary language on its own initiative. Nobody from the Reznik firm ever signed off on this change.

■■■ Paul Revere asserts that by distributing the new Benefit Summary to its employees, and by telling its employees that it accepted responsibility for its accuracy and content, Reznik expressly approved the language of the revised Benefit Summary. It provides no authority for this proposition, nor can we find any. There is case law holding that if an employer publishes an inaccurate summary plan description and an employee relies on that plan description to his or her detriment, the employer will be bound by the inaccuracy.[33] But to say that an employee may hold an employer to its own representations is a far cry from saying that an insurer may unilaterally amend a plan summary with an insured in a manner that does not comport with the underlying contract's provision for changes and then, when the insured fails to detect the change, exploit the oversight to the detriment of the insured's employees. We hold this contention to be devoid of merit.

Because the actual policy purports to be fully integrated, and because even if it were not fully integrated, the Benefit Summary language Paul Revere added is null and void, the district court should have evaluated Paul Revere's decision to deny Grosz–Salomon benefits using de novo review.[34]

## III

■■■ Normally, upon discovering that the district court used the wrong standard of review in evaluating a plan administrator's decision to deny benefits, we would reverse and remand.[35] Here, however, such a course of action would be a waste of judicial resources. Not only did the district court proceed the first time around by thoroughly weighing the evidence,[36] which is precisely what we would ask it to do on remand, but in a post-judgment order, it acknowledged its erroneous application of abuse of discretion review and confirmed that it would rule in Grosz–Salomon's favor under the more generous de novo standard as well. Thus here, even more so than in *Newcomb v. Standard Insurance Co.*,[37] there is "no practical purpose in remand."[38] Accordingly, we affirm.

## IV

Upon finding that Paul Revere abused its discretion in terminating Grosz–Salomon's disability benefits, the district court ordered the insurer to retroactively reinstate Grosz–Salomon's benefits effective January 1, 1998, the date on which it discontinued them, through February 1, 1999, the approximate date of final judgment.[39]

**33.** *See, e.g., Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 939 (5th Cir.1993)

Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on *those who do the drafting,* and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask. (emphasis added).

**34.** Because we hold that de novo review applies, we need not address Grosz–Salomon's contention that she should have been allowed further discovery to show a conflict of interest, since the point of showing a conflict of interest is to obtain a more demanding standard of review than abuse of discretion.

**35.** *Kearney,* 175 F.3d at 1094–95.

**36.** The district court noted, for example, that although the videotapes cast some shadow over Grosz–Salomon's credibility, they did not shed much light on whether she could function full-time as a trial attorney. The district court also observed that all the doctors who actually examined Grosz–Salomon found that she was totally disabled, and that *the only two whose opinions were contrary* did not examine her.

**37.** 187 F.3d 1004 (9th Cir.1999).

**38.** *Id.* at 1007.

**39.** The judgment was not in fact filed until February 4, 1999.

Paul Revere contends that this remedy usurped its prerogatives as plan administrator and necessarily relied on facts not in evidence.

 When a district court's remedy takes the form of an equitable order, we review that order for an abuse of discretion.[40] We find no such abuse here. Contrary to Paul Revere's assertion, retroactive reinstatement of benefits is appropriate in ERISA cases where, as here, "but for [the insurer's] arbitrary and capricious conduct, [the insured] would have continued to receive the benefits" or where "there [was] no evidence in the record to support a termination or denial of benefits."[41] In other words, a plan administrator will not get a second bite at the' apple when its first decision was simply contrary to the facts. This court's decision in *Saffle v. Sierra Pacific Power Company Bargaining Unit Long Term Disability Income Plan*[42] does not counsel to the contrary. *Saffle* stands for the proposition that "remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."[43] This proposition is both unremarkable[44] and inapposite. First, as discussed above, the operative plan documents do not confer discretion on Paul Revere. Second, even if they did, Paul Revere did not misconstrue the definition of "disabled," or apply the wrong standard to evaluate Grosz–Salomon's claim. It applied the right standard, but came to the wrong conclusion.[45] Under these circumstances, remand is not justified. Retroactive reinstatement of benefits was proper.[46]

### V

 Grosz–Salomon contends that the district court should have awarded her pre-judgment interest at her requested rate of 10% instead of at the rate of 4.91%.[47] We review the district court's cal-

**40.** *United States v. Washington,* 157 F.3d 630, 642 (9th Cir.1998).

**41.** *Quinn v. Blue Cross & Blue Shield Ass'n,* 161 F.3d 472, 477 (7th Cir.1998) (collecting cases); *accord Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 697 (7th Cir.1992).

**42.** 85 F.3d 455 (9th Cir.1996).

**43.** *Id.* at 461.

**44.** *See, e.g., Quinn,* 161 F.3d at 477 (acknowledging that unlike cases where the plan administrator simply makes a decision that is not supported by the facts, cases in which an agency possessed with discretion fails to make adequate findings or provide adequate reasoning should be remanded, rather than simply resolved at the appellate level).

**45.** For this reason, Paul Revere's reliance on *Henry v. Home Ins. Co.,* 907 F.Supp. 1392 (C.D.Cal.1995), is also misplaced. In that case, in which then-District Judge Tashima held that remand was warranted, a plan administrator imbued with discretion "conducted its investigation and made its claim determination under a misconception of the meaning of the Plan's provisions." *Id.* at 1398. Under those circumstances, it was entirely appropriate (and indeed, prescient), for the district court to remand the case, holding

that "[i]t is not the court's function ab initio to apply the correct standard to Henry's claim." *Id.*

**46.** *Quinn,* 161 F.3d at 477.

**47.** Although Grosz–Salomon describes this rate as the treasury bill rate, we note that it is not in fact the treasury bill rate which 28 U.S.C. § 1961(a) dictates should apply. According to that section, the district court should have defaulted to "the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961(a). The date of judgment was February 5, 1999. According to the Bureau of the Public Debt, the auction immediately prior to this closed on February 4, 1999, at a rate of 4.58%. Historical Securities Search Results From January 15, 1999, to February 15, 2000, *http://www.http://www.public-debt.treas.gov/servlet/OFAuctions* (last updated Dec. 15, 2000). The March auction, which the district court may have had in mind since it dealt with the issue of pre-judgment interest for the first time in its April 1999 Amended Final Order, closed at 4.918%. *Id.* Because Paul Revere did not appeal the rate of pre-judgment interest, we will not disturb the district court's minor error.

culation of prejudgment interest for an abuse of discretion.[48] "We have held that the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate."[49] Although Grosz–Salomon provided evidence that Paul Revere garnered substantially more than 4.91% on its investments during the period in question, this evidence is not so strong as to compel us to find that the district court's failure to diverge from the norm constitutes an abuse of discretion.

## VI

 The final issue in this case concerns the propriety of the district court's award of attorneys' fees to Grosz–Salomon. Paul Revere's first contention, that Grosz–Salomon is not a prevailing party, is rendered moot by our decision today. Its second contention, that it is per se error for the district court not to engage in the five-factor inquiry elaborated in *Hummell v. S.E. Rykoff & Co.*,[50] is flatly contradicted by our decision in *Nelson v. EG & G Energy Measurements Group, Inc.*[51] In that case, we explicitly stated that where, as here, the fact that the plaintiff prevailed "is evident from the order of the district court, it is unnecessary for the court to engage in a discussion of the factors enumerated in *Hummell.*"[52] We see no reason, and we have no authority, to reconsider that position.

AFFIRMED.

---

**48.** *Blanton v. Anzalone,* 813 F.2d 1574, 1576 (9th Cir.1987).

**49.** *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1391 (9th Cir. 1994) (internal quotations omitted).

**50.** 634 F.2d 446 (9th Cir.1980).

**51.** 37 F.3d 1384 (9th Cir.1994).

**52.** *Id.* at 1392.