**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.

WEALTH AND TAX ADVISORY
SERVICES, INC.,
           *Defendant-Appellee.*

No. 06-55915

D.C. No.
CV-05-08796-DDP

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
April 8, 2008—Pasadena, California

Filed May 15, 2008

Before: Cynthia Holcomb Hall, Thomas G. Nelson, and
Barry G. Silverman, Circuit Judges.

Per Curiam Opinion

5683

**COUNSEL**

Eileen J. O'Connor, Robert W. Metzler, and Gretchen M. Wolfinger, United States Department of Justice, Washington, D.C., for the plaintiff-appellant.

David Jacobs and Deanna L. Ballesteros, Epstein Becker & Green, Los Angeles, California, for the defendant-appellee.

---

**OPINION**

PER CURIAM:

We hold today that a 29-page "draft opinion letter" sent by the taxpayers' accountants to the taxpayers' tax lawyers, containing extensive legal authority and analysis of a complicated tax transaction, constitutes a "memorandum." Therefore, even though the letter was characterized as a "draft," it was nevertheless subject to disclosure pursuant to the taxpayers' agreement to provide to the IRS "*[a]ll* opinions and memoranda that provide a legal analysis" of the transaction in question.

The United States appeals from the district court's order denying the government's petition to enforce a summons issued by the Internal Revenue Service. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

In December 2001, the Internal Revenue Service released Announcement 2002-2, announcing a "disclosure initiative" that invited taxpayers "to disclose their tax treatment of certain tax shelters." 2002-1 C.B. 304. For any item voluntarily disclosed under this initiative, the IRS agreed to waive the accuracy-related penalty that would otherwise be triggered by the underpayment of taxes. *Id.* The Announcement specified that in order to benefit from the initiative, a taxpayer would need to submit, among other things:

a statement agreeing to provide, if requested, copies of all of the following: (a) All transactional documents, including agreements, contracts, instruments, schedules, and, if the taxpayer's participation in the transaction was promoted, solicited or recommended by any other party, all material received from that other party or that party's advisor(s); (b) All internal documents or memoranda used by the taxpayer in its decision-making process, including, if applicable, information presented to the taxpayer's board of directors; and (c) *All opinions and memoranda that provide a legal analysis of the item, whether prepared by the taxpayer or a tax professional on behalf of the taxpayer.*

*Id.* (emphasis added).

In response, Henry and Susan Samueli submitted a voluntary disclosure statement that included, among the other required sections, their agreement to provide "[a]ll opinions and memoranda that provide a legal analysis of the item, whether prepared by the taxpayer or a tax professional on behalf of the taxpayer." The disclosure statement also stated that "[d]isclosure of the above information is not intended to constitute a subject matter waiver of the attorney-client privilege or the work product doctrine with respect to other documents addressing the same, or any other, subject matter."

The IRS initiated an audit of the Samuelis, and in March 2004, the IRS issued a summons to Wealth and Tax Advisory Services, the successor to Arthur Andersen and the Samuelis' tax advisors, seeking copies of documents associated with a particular deduction claimed by Dr. and Mrs. Samueli on their 2001 tax return.[1] Wealth and Tax Advisory Services produced all responsive, non-privileged documents, and provided a

---

[1]The item in question concerned a leveraged bond transaction entered into by a trust created by the Samuelis.

privilege log in which it identified four documents that it was withholding on the grounds of attorney-client privilege, work product, and the tax practitioner-client privilege set forth in 26 U.S.C. § 7525(a).[2] The government filed a petition to enforce the summons in district court, asserting that even if the documents were privileged on any of the claimed grounds (which the government disputed), the Samuelis had waived privilege by submitting their voluntary disclosure statement in April 2002.

After reviewing the documents in camera, the district court ruled that three of the four documents[3] were privileged and did not fall into any of the three categories of documents for which privilege was waived: they were not "transactional documents" or "internal documents used by the taxpayer," nor did they contain any legal analysis of the investment. The government does not challenge these rulings on appeal.

The fourth document is described as a "draft opinion letter," and was written by an Arthur Andersen accountant. The draft was sent to McDermott Will & Emery, a law firm representing the Samuelis. After McDermott Will & Emery tax lawyers reviewed the draft and communicated with the Arthur Andersen accountants about it, the draft never ripened into a final opinion letter. It is undisputed that Arthur Andersen

---

[2]26 U.S.C. § 7525(a) provides that:

> [w]ith respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

[3]These three documents are described in the privilege log as follows: (1) an internal Arthur Andersen memo written for the file; (2) an email from Keegan Stroup, an Arthur Andersen employee, to other Arthur Andersen employees; and (3) communications between Arthur Andersen and McDermott Will & Emery LLP, the law firm representing the Samuelis.

never issued a finalized tax opinion letter and that the Samuelis never received one. The district court ruled that although subsection (c) of the disclosure statement does cover "opinions" that provide a legal analysis, "because the document is a draft, it does not rise to the level of a tax opinion letter."

Now on appeal, the government contends that the draft, even though it is characterized as a draft, is nonetheless a "memorandum that provides legal analysis," and therefore within a category of documents the Samuelis agreed to provide. We agree.

**[1]** Announcement 2002-2 required taxpayers to turn over "[a]ll opinions and memoranda that provide a legal analysis of the item, whether prepared by the taxpayer or a tax professional on behalf of the taxpayer." There is no debate that the draft opinion provides a "legal analysis of the item," and that it was "prepared by . . . a tax professional on behalf of the taxpayer." Thus, the only issue is whether the document is a memorandum.

**[2]** Both lay and legal dictionaries define memorandum as an informal record designating something to be remembered. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1408-09 (3d ed. 2002) ("an informal record of something that one wishes to remember or preserve for future use."); BLACK'S LAW DICTIONARY 984 (6th ed. 1990) ("[a]n informal record, note or instrument embodying something that the parties desire to fix in memory by the aid of written evidence" and an "[i]nformal office communication"). We see no reason why this definition should not govern here. Courts often turn to dictionaries to determine the plain, unambiguous, and common meaning of terms. *See*, *e.g.*, *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1031-32 (9th Cir. 1992) (relying on Black's Law Dictionary to find the "plain, unambiguous meaning of [the term] 'indemnify' "); *Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1116 (9th Cir. 2002) ("The plain meaning associated with 'tangible prop-

erty' is [the dictionary definition.]"); *see also Rousey v. Jacoway* , 544 U.S. 320, 326 (2005) (common understanding of terms determined by dictionary definition). In addition, the Webster's and Black's definitions of memorandum comport with the meanings that other courts have ascribed to the term. *See Taylor v. Worrell Enterprises*, *Inc.*, 409 S.E. 2d 136, 143 (Va. 1991) (Hassell, J., dissenting) (relying on Black's Law Dictionary to define memorandum as an "informal record, note or instrument . . . ."); *Reusswig v. Erie Ins.*, 49 Pa. D. & C. 4th 338, 347 (Pa. D. & C. 2000) (same), *Miller v. John Hancock Mut. Life Ins. Co.*, 155 S. W. 2d 324, 327 (Mo. Ct. App. 1941) (" 'memoranda' . . . is an informal record of something which it is desired to remember"); *Patterson v. Beard*, 288 N.W. 414, 416 (Ia. 1939) ("A 'memorandum,' in common parlance, is an informal record, often of something one desires to remember or to preserve for future use.").

[3] The term "memoranda" includes informal documents by its very definition. Moreover, the disclosure initiative requires taxpayers to turn over "*all* opinions or memoranda," and the use of the term "all" is inclusive of any type of opinion or memorandum, regardless of whether in draft or final form. Indeed, while the IRS could have inserted the term "draft" into the announcement, it is more telling that the IRS did not insert the term "final" into the announcement, but rather included "all" such documents. *See Atari*, 981 F.2d at 1032 ("Atari could have limited its obligation to compensate Federated officers to actions brought by third parties, but it did not. Instead, it agreed to indemnify the officers against '*all* acts and omissions' to the extent permitted by law.") (emphasis added).

[4] Accordingly, "memoranda" in the disclosure agreement refers to informal records designating something to be remembered.[4] This definition clearly encompasses the Arthur Ander-

---

[4]Interpreting memoranda to include informal documents does not mean that the disclosure initiative would cover every document remotely related

sen opinion letter, which, though it was never formally finalized, spanned twenty-nine pages and included extensive legal analysis of the leveraged bond transaction the Samuelis entered into through their trust. Thus, the district court should have enforced the government's summons and required the Samuelis to turn over the draft opinion letter. The court's order to the contrary is REVERSED, and the case REMANDED for further proceedings consistent with this opinion.

---

to the tax shelter transaction at issue. To the contrary, the very language of Announcement 2002-2 limits the relevant documents to "[a]ll opinions and memoranda *that provide a legal analysis of the item.*" Thus, the government's reach only includes documents that contain a legal analysis of the transaction. In this case, there is no dispute that the opinion letter provides a legal analysis.