**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLAYTON R. POORE; DOROTHY ANN
TESKE; SHARON RIGGS; DENNIS
HAWKE; MERRIE LOU HAWKE; JOHN
ANDERSON; BARBARA ANDERSON;
ROBERT ELLEDGE; MARY ELLEDGE;
ROBERT POSCHWATTA, MARIE
POSCHWATTA; JAMES GUNDIFF;
MARIE GUNDIFF; JERRY CUSICK;
SELMA CUSICK; HAROLD HUIRAS;
LINDA HUIRAS; OWEN ENEVOLDSEN;
and DONNA ENEVOLDSEN,
    *Plaintiffs-Appellants,*

v.

SIMPSON PAPER COMPANY, a
Washington corporation,
    *Defendant-Appellee.*

No. 05-36060

D.C. No.
CV-03-00525-HA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
December 5, 2007—Portland, Oregon

Filed September 22, 2008

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Graber

13325

**COUNSEL**

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan, Portland, Oregon, argued the cause for the plaintiffs-appellants and filed briefs.

Douglas S. Parker, Preston Gates & Ellis LLP, Anchorage, Alaska, argued the cause for the defendant-appellee and filed a brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether we have subject matter jurisdiction over this dispute about retirement benefits.

I

Simpson Paper Company ("Simpson") owned and operated the Evergreen Mill in West Linn, Oregon from 1990 until 1996, when it closed for economic reasons. Plaintiffs are former workers in the mill, who retired at ages over 55 but under 65, and their dependent spouses (collectively referred to as "early retirees" or "retirees").

The Association of Western Pulp and Paper Workers ("the Union") represented the hourly employees at the mill, including the early retirees, from the 1970s through the time of the mill's closure. Three collective bargaining agreements ("CBAs") were in force during the time Simpson owned the mill: 1990-93, 1993-95, and 1995-2001. Simpson and the Union negotiated a closure agreement in 1996, which terminated the 1995-2001 CBA.

The first CBA incorporated by reference a benefit booklet, as follows: "Subject to all the provisions of the Benefit Plan Booklet the Company will provide for each eligible employee and each eligible dependent the coverages agreed to in its labor agreement dated November 27, 1990." The incorporated booklet provided that early retirees could continue medical coverage that existed at the time of retirement and that they could "change coverage at the annual open enrollment on the same basis as active employees." The booklet further provided that such coverage would continue until the retiree "bec[ame] eligible for Medicare, attain[ed] age 65, or until . . . death, whichever occurs first." A similar extension period was provided for continuation of medical coverage for the retirees' spouses. During the time that such coverages continued, the cost was "paid on the same basis as active employees." Finally, the benefits booklets specifically reserved to Simpson the "right to alter, amend, delete, cancel or otherwise change" the welfare plan benefits "at any time, *subject to negotiation with the Union*." (Emphasis added.)

The latter two CBAs likewise incorporated the benefits booklet. Such contracts stated that, "[u]nless otherwise specified, all participants covered by the health care plans will be subject to the same level of contributions as active employees and to the same health care plan provision changes which take effect from time to time." Though there were slight changes to the benefits booklet over the years, the benefits Simpson provided therein remained substantially the same.

Simpson's closure agreement negotiated with the Union provided that

> [e]mployees who are curtailed as a result of the closure and begin receiving their Simpson pension benefits as of the first of the month immediately following curtailment, will be eligible for retiree medical coverage in accordance with the provisions of the Benefits Plan Booklet.

Then-active employees received a "Termination Checklist" at meetings just before the closure. It contained essentially the same provision just quoted. Neither the closure agreement nor the information given to employees who remained employed until closure referenced early retiree or dependent spouse benefits for those who *already* had retired.

In 2002, Simpson notified all retirees that it intended to phase out, and eventually to eliminate, retirement health benefits, and on July 1, 2004, it carried out such intention and stopped providing retirement health benefits. The present action followed.

The early retirees assert that Simpson breached its duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, by terminating health benefits without having obtained the Union's agreement or having bargained to impasse. They also assert breach of contract claims under the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185(a), arguing Simpson violated its obligations under the CBAs. The district court granted summary judgment to Simpson, concluding that the early retirees have no vested right to the benefits they seek. This timely appeal followed.

## II

The parties do not question our jurisdiction; however, we have an "independent obligation" to ensure that such exists. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (per curiam).

## A

**[1]** To establish standing to sue under ERISA, the early retirees must show that they are plan "participants." *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 392 (9th Cir. 1998). ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). The Supreme Court has clarified that former employees satisfy this definition if they have " 'a reasonable expectation of returning to covered employment' or . . . '*a colorable claim*' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (emphasis added) (quoting *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986)).

**[2]** However, ERISA does not require that welfare benefits, including health benefits, actually vest. 29 U.S.C. § 1051(1); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Rather, whether such benefits are vested is a matter of private contract. *See Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 514-15 (1997); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (9th Cir. 2001) ("Simply put, an employee's rights under an ERISA welfare plan do not vest unless and until the

employer says they do."). Additionally, because vesting welfare benefits is "an extra-ERISA commitment[, such] must be stated in clear and express language." *Grosz-Salomon*, 237 F.3d at 1160 (citation omitted).

[3] A "vested right" is commonly defined as a "right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *Black's Law Dictionary* 1349 (8th ed. 2004).[1] Such definition suggests that unalterability, or at least unalterability in the absence of consent from the person holding the right, is required before a right is deemed vested.[2] We have applied a similar interpretation in at least two prior opinions.

[4] In *Bower v. Bunker Hill Co.*, retirees sued their former employer alleging that their retirement medical benefits were improperly terminated. 725 F.2d 1221 (9th Cir. 1984). The district court granted summary judgment in favor of the employer, finding that the plaintiffs' benefits were not vested. On appeal, we explained that "if the pensioners' medical insurance constituted a vested benefit, that benefit could not be ended without the pensioners' consent." *Id.* at 1223. Similarly, in *Grosz-Salomon*, we concluded that the employee's rights under an insurance policy were not vested because the employer retained the right to change the policy without the employee's consent. 237 F.3d at 1160.

[5] Several of our sister circuits have also taken this view. The Third and Seventh Circuits have held that vesting a right or benefit means to render it "forever unalterable." *Bland v.*

---

[1]For purposes of pension benefits, which must meet specific minimum vesting requirements, ERISA equates "vested" with "nonforfeitable." *See* 29 U.S.C. § 1053. The statute further defines a "nonforfeitable" right as a right that is "unconditional, and which is legally enforceable against the plan." *Id.* § 1002(19).

[2]*Cf. Black's Law Dictionary* 1595 (8th ed. 2004) (defining "vested" in a property law context as "not contingent; unconditional; [or] absolute").

*Fiatallis N. Am., Inc.*, 401 F.3d 779, 784 (7th Cir. 2005); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 139 (3d Cir. 1999). Likewise, the Fifth Circuit has explained that "[a]n employer 'vests' a benefit under ERISA when it intends to confer unalterable and irrevocable benefits on its employees." *Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 377 (5th Cir. 2006).

**[6]** Applying this interpretation of vesting, the district court was correct in concluding that the early retirees' health benefits are not vested. The CBA and closure agreement both incorporate the plan booklet, which expressly reserves to Simpson "the right to alter, amend, delete, cancel or otherwise change welfare . . . plan benefits at any time, subject to negotiation with the Union." Thus, while the plan booklet also provides a specific duration in which the benefits at issue apply, which can in some circumstances indicate vesting, *see Bland*, 401 F.3d at 785-86, when read together with the reservation-of-rights provision, the plan allows such benefits to be altered, or even terminated, without the retirees' consent, which defeats vesting. *Id.* at 786; *see also Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 100 (2d Cir. 2001) (holding where durational language and reservation of rights is included in same document, the language cannot be construed as vesting benefits for the stated duration). The Seventh Circuit explained such result as follows:

> [T]he presence of a reservation of rights clause fundamentally alters the interpretation of [durational] language; both the clause and the [durational] language must be read together, creating a tension that is best relieved by finding that retirees are entitled to benefits for [the stated duration], but that this entitlement is subject to change at the employer's will.

*Bland*, 401 F.3d at 786.

**[7]** The early retirees argue that the negotiation qualifier in Simpson's reservation of rights demonstrates that the employer does not have a unilateral right to change their retirement benefits, and thus the clause does not defeat vesting. Even assuming such interpretation of the qualifying clause is correct, as to which we express no opinion, it does not get the early retirees to where they wish to be. Whatever authority Simpson may have relinquished, on the express terms of the clause, the retirees do not control their continued receipt of benefits. A duty to negotiate is not of the same character as a duty to secure consent. Regardless of what Simpson is required to do in satisfying its obligation to negotiate, it ultimately retains the exclusive authority to change retirement health benefits irrespective of the outcome of such negotiations.

**[8]** In addition to the reservation of rights, there are other provisions in the plan documents showing the malleability of the retirees' benefits. The 1995-2001 CBA specifies that "all participants covered by the health care plans will be subject to the same level of contributions as active employees and to the same health care plan provision changes which take effect from time to time." Likewise, the 1995 plan booklet, incorporated into the CBA, states that Simpson is only obligated to pay for retiree health benefits to the same extent that it pays for active employees' benefits. These provisions, taken together with the reservation of rights, establish that the retirees' rights to benefits are not "unalterable and irrevocable," but rather are subject to change by Simpson. *Halliburton Co. Benefits Comm.*, 463 F.3d at 377.

Because the early retirees do not have vested rights to the retirement health benefits they seek, they lack standing under ERISA, and we must dismiss such claims for lack of subject matter jurisdiction. *See Burrey*, 159 F.3d at 392.

## B

**[9]** The retirees also assert breach of contract claims under the LMRA. The LMRA confers federal jurisdiction over

"[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). As a general rule, where the contract at issue has expired, the parties are "released . . . from their respective contractual obligations" and any dispute between them cannot be said to arise under the contract. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991). An exception to this general rule exists, however, where the parties' dispute concerns a "right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.*

**[10]** Here, as discussed above, the retirees' rights to health benefits under the now expired CBAs were not vested. Thus, their claim seeking recovery of such benefits does not arise under contract sufficient to trigger the LMRA's grant of federal subject matter jurisdiction because their *contractual* rights to such benefits "no longer exist[ ]." *Office & Prof'l Employees Ins. Trust Fund*, 783 F.2d at 921. *See generally Cement Masons Health & Welfare Trust Fund v. Kirkwood-Bly, Inc.*, 520 F. Supp. 942, 943-46 (N.D. Cal. 1981), *aff'd*, 692 F.2d 641 (9th Cir. 1982) (explaining a court has jurisdiction under the LMRA only "to enforce provisions" of a "legally operative" agreement).

**[11]** The dissent seemingly concludes, in part, that because the early retirees have a vested contractual right requiring Simpson to negotiate with the Union before changing benefits, their claims alleging that Simpson failed to satisfy this requirement arise under the parties' contracts sufficient to confer federal jurisdiction. Even assuming the dissent were correct on this point, the retirees here are not simply seeking procedural relief; they seek the payment of benefits. Thus, under *Office & Prof'l Employees Ins. Trust Fund*, we conclude that we lack subject matter jurisdiction over these claims as well. 783 F.2d at 921.

For the foregoing reasons, the appeal is

**DISMISSED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

A. *The majority confuses subject matter jurisdiction with the merits.*

"Federal courts have an 'unflagging' duty to hear cases that are properly before them." *Cinema Arts, Inc. v. County of Clark*, 722 F.2d 579, 582 (9th Cir. 1983) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The majority shirks this responsibility by closing the courthouse door to plaintiffs who raise colorable claims under federal law. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) ("In order to establish that he or she may become eligible for benefits [under ERISA], a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."). In so doing, the majority ignores fundamental Supreme Court precedent and makes the mistake of conflating our jurisdictional inquiry with an inquiry into the merits of Plaintiffs' claims.

We recently explored the distinction between a lack of subject matter jurisdiction and a failure to state a federal claim on the merits, also in the ERISA context. In *Cement Masons Health & Welfare Trust Fund v. Stone*, 197 F.3d 1003, 1005 (9th Cir. 1999), the district court had dismissed an ERISA claim for lack of subject matter jurisdiction. We agreed that the complaint should have been dismissed, but held that the decision "should have been made on the merits rather than for want of subject matter jurisdiction." *Id.* We explained:

The failure to state a federal claim, either on the pleadings or the facts, is not the same thing as a failure to establish subject matter jurisdiction. *Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction*, even if that claim is later dismissed on the merits. As the Supreme Court wrote in *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946),

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. . . . If the court . . . exercise[s] its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be based on the merits, not for want of jurisdiction.

*See also Wheeldin v. Wheeler*, 373 U.S. 647, 649, 83 S. Ct. 1441, 10 L. Ed. 2d 605 (1963) ("We agree . . . that on the face of the complaint the federal court had jurisdiction. . . . But on the undisputed facts, . . . no federal cause of action can be made out.").

*Id.* at 1008 (emphasis added) (ellipses and alteration in original).

So, here, it may be that Plaintiffs eventually would lose on the merits. But their federal claims are not frivolous. As I will explain in the next section, this dispute arises under the relevant collective bargaining agreements and benefit plans, which explicitly provide that early retirees' and spouses' health care benefits are to continue after the agreements' expiration. That being so, we have federal question jurisdiction, 28 U.S.C. § 1331, over this action, which is brought pursuant to the Labor Management Relations Act, 29 U.S.C. § 185(a), and ERISA, *id.* § 1132(a)(1)(B).

B.   *The collective bargaining agreements and benefit plans guarantee certain medical benefits after expiration of the contract.*

Generally, when a collective bargaining agreement ("CBA") expires, its terms survive only to define an employer's obligations under the National Labor Relations Act, which fall under the exclusive jurisdiction of the National Labor Relations Board. *Office & Prof'l Employees Ins. Trust Fund v. Laborers Funds Admin. Office of N. Cal., Inc.*, 783 F.2d 919, 921-22 (9th Cir. 1986). Nevertheless, "the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) (internal quotations marks omitted).

In other words, the parties may agree that the terms of a CBA survive expiration of the CBA. As explained by the Supreme Court, "an expired contract has by its own terms released all its parties from their respective contractual obligations, *except obligations already fixed under the contract but as yet unsatisfied.*" *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991) (emphasis added).

> Rights which accrue[ ] or vest[ ] under the agreement will, as a general rule, survive termination of the agreement. And of course, if a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, *disputes as to such continuing benefits may be found to arise under the agreement* . . . .

*Id.* at 207 (emphasis added); *see also Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 249 (1977) ("[T]here is . . . no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had

expired. . . . The dispute therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract." (citation, footnote, and internal quotation marks omitted)).

Here, Plaintiffs' claims are contractual. They sued under the Labor Management Relations Act "for violation of contract[ ]," 29 U.S.C. § 185(a), and under ERISA "to recover benefits due . . . under the terms of [their] plan," *id.* § 1132(a)(1)(B). They argue that they have a "right to retiree health care benefits pursuant to the terms of the collective bargaining agreements under which they retired." They contend that the CBAs "only allow[ ] changes to be made subject to negotiation with the union," that the term "negotiation" has the usual labor law meaning of bargaining to impasse, *see id.* § 158(a)(5) & (d), and that the record on summary judgment demonstrates a genuine issue of material fact as to whether Defendant bargained in good faith. Defendant counters that Plaintiffs' right to benefits did not vest under the CBAs. Alternatively, Defendant argues that, under the CBAs, "negotiation" over termination of retiree health care benefits does not require anything more than advance notification, which it gave.

The relevant CBAs provide, in substance, that early retirees will retain company health insurance benefits until age 65. Similarly, their spouses are to receive coverage until age 65 or until certain other conditions occur. The contracts also incorporate the terms of benefits booklets. The benefits booklets, in turn, provide that Defendant employer "reserves the right to alter, amend, delete, cancel or otherwise change" the welfare plan benefits "at any time, *subject to negotiation with the Union.*" (Emphasis added.) The most reasonable reading of that provision is that the CBAs grant Plaintiffs the continuing benefit of health insurance until age 65, which Defendant retains the right to end at any time, *but not unilaterally.*[1]

---

[1]Although the bargained-for closure agreement does not address the status of early retiree health benefits, it does appear to assume that retiree

Under *Litton* and *Nolde Brothers*, the parties thus contracted for a benefit to survive termination of the CBAs, and we therefore have jurisdiction to examine this dispute that arises under those CBAs.

On this record, both the interpretation of the "subject to negotiation" clause and the extent to which that clause, however it is properly interpreted, was followed are disputed issues of fact. The text of the CBAs requires that Defendant's right to terminate benefits is "subject to negotiation with the Union," but the CBAs do not explain what the parties intended the term "subject to negotiation" to require. Parties' past practices inform the meaning of terms in a CBA. *See Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1352 (9th Cir. 1990) ("A collective bargaining agreement is not governed by the same principles of interpretation applicable to private contracts . . . and cannot be interpreted without considering the scope of other related collective bargaining agreements as well as the practice, usage and custom pertaining to all such agreements." (citation omitted)). But the district court did not allow the parties to develop a factual record on what they considered "negotiation" to require, nor did the court examine what actions occurred in advance of the benefits' termination that might have constituted negotiation.

Because the CBAs granted Plaintiffs the right to continue receiving health benefits until age 65 subject to Defendant's negotiating with the Union, which may or may not have occurred, summary judgment in favor of Defendant was inappropriate. Genuine issues of material fact remain.

---

welfare benefits *will continue* under the terms of the superseded CBA: "Employees who are curtailed as a result of the closure . . . *will be eligible for retiree medical coverage in accordance with the provisions of the Benefits Plan Booklet*." (Emphasis added.)

In refusing to entertain the present litigation at all, the majority makes two further errors. First, it adopts an out-of-context definition of vesting. Second, it ignores basic principles of contract law. Each error contravenes Supreme Court precedent.

The majority holds that "unalterability in the absence of consent from the person holding the right[ ] is required before a right is deemed vested" because "[a] 'vested right' is commonly defined as a 'right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.' " Majority op. at 13332 (quoting *Black's Law Dictionary* 1349 (8th ed. 2004)). There is nothing "common" about the majority's definition of a vested right; rather, its definition applies specifically to the vesting of *constitutional* rights, not generally to *contractual* rights.[2] *See Black's Law Dictionary* 1349 (explaining the quoted definition of "vested right" by citing constitutional law sources). As to contractual rights, the majority's imposition of a requirement of unalterability has no basis in precedent or common usage.[3]

As the majority acknowledges, here, "whether such benefits are vested is a matter of private contract." Majority op. at 13331. In the context of private employment contracts, the Supreme Court has stated that a right to a benefit is vested simply if "the employee's right to the benefit would survive

---

[2]The majority also cites to ERISA's equating of "vested" with "nonforfeitable" as evidence that a right must be unalterable in order to be vested. Majority op. at 13332 n.1. But "under the ERISA definition, nonforfeitable does not mean that the payments must be absolutely unconditional." *Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374, 1378 (9th Cir. 1994).

[3]The unalterability requirement also has no basis in logic. For example, if a contract guaranteed pension payments of $X in year one, $X + $1,000 in year two, and $X + $2,000 in year three, we would have jurisdiction over a claim to those benefits, just as we would if the contract gave retirees $X each year.

a termination of his employment." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 363-64 (1980); *see United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005) ("[W]e are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court."). This principle comports with the common, non-constitutional definition of a "vested" right as "a completed, consummated right for present *or future* enjoyment." *Black's Law Dictionary* 1595 (emphasis added); *see United States v. Wealth & Tax Advisory Servs., Inc.*, 526 F.3d 528, 530 (9th Cir. 2008) (per curiam) ("Courts often turn to dictionaries to determine the plain, unambiguous, and common meaning of terms."). In other words, the CBAs vest whatever their terms state, whether agreed to be paid in the present or in the future (after expiration of the CBA).

The majority is mistaken that this court's precedents and our sister circuits' precedents "have applied a similar interpretation" of vesting. Majority op. at 13332. In *Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1223 (9th Cir. 1984), we stated that, "if the pensioners' medical insurance constituted a vested benefit, that benefit could not be ended without the pensioners' consent." *See* majority op. at 13332 (quoting *Bower*). But this statement merely establishes what occurs *if* a benefit vests —it does not explain *how* a benefit vests.[4] Similarly, the other precedents that the majority cites establish only that a vested right is "forever unalterable," not that a right must be forever unalterable in order to vest. *See Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 784 (7th Cir. 2005) ("*Upon vesting*, benefits become forever unalterable . . . ." (emphasis added)); *Int'l Union, United Auto. Workers of Am. v. Skinner Engine Co.*,

---

[4]The majority's citation to *Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154 (9th Cir. 2001), is equally inapposite. In that case, the benefit plan "could change . . . upon written request from the policyholder." *Id.* at 1160. In other words, no consent or negotiation was required from anyone—the contract had a standard, limitless reservation of rights clause. Here, Defendant's right to change the benefits is not unfettered; it is subject to negotiation with the Union.

188 F.3d 130, 139 (3d Cir. 1999) ("In applying these standards, it must be remembered that to vest benefits is *to render them* forever unalterable." (emphasis added)); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc) ("To vest benefits is *to render them* forever unalterable." (emphasis added)).

In short, the precedents unremarkably state that, *if* a benefit is vested, then that bargained-for benefit cannot be changed.[5] *See* 23 *Williston on Contracts* § 63:1, p. 434 (4th ed. 2002) ("As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." (footnote omitted)). The majority, on the other hand, relies on the precedents to adopt the converse principle—only if a benefit is unalterable does the benefit vest. The majority's precedential analysis thus relies on a logical fallacy.

The majority also quotes *Halliburton Co. Benefits Committee v. Graves*, 463 F.3d 360, 377 (5th Cir. 2006), majority op. at 13333, but its quotation is incomplete. In *Halliburton*, the Fifth Circuit wrote that "[a]n employer 'vests' a benefit under ERISA when it intends to confer unalterable and irrevocable benefits on its employees." 463 F.3d at 377. The court went on to hold: "The parties were free to impose contractual obligations on the right to amend or terminate the [retiree benefits], and they did. Because of these limitations, [the employer] cannot alter the retiree program, except as consistent with the plan . . . ." *Id.* at 378. Consequently, regardless of the Fifth Circuit's definition of vesting, the court exercised jurisdiction over alterable benefits and bound the employer to

---

[5]The Supreme Court stated as much when it required that a benefit be "fixed under the contract but as yet unsatisfied." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991). What the majority fails to realize is that Plaintiffs' benefits *are* fixed. They have a right to benefits unless and until Defendant negotiates with the Union (or they reach age 65). It is a right that can be *divested*, but that does not change the fact that it is vested *until* negotiation occurs.

the bargained-for contractual limitations on its ability to change retiree benefits—an approach in direct conflict with the path taken by the majority.

Most importantly, the majority's holding violates basic principles of contract law. The majority holds that Plaintiffs' benefits are not vested because Defendant can terminate them "subject to negotiation with the Union." But, under the terms of the CBAs, Plaintiffs have an absolute contractual right to their benefits *unless and until* such negotiation occurs (or until they turn 65). The act of negotiation therefore operates as a condition subsequent. *See* 13 *Williston on Contracts* § 38:9, p. 408 ("A condition subsequent has been defined as a future event upon the happening of which the agreement or obligations of the parties would be no longer binding."). Under contract law, "[t]he fact that rights are future and conditional does not prevent their recognition and protection . . . . A contract creating such rights is legally effective *according to its terms*. . . . [T]hese rights *are vested*." 8 *Corbin on Contracts* § 30:5, p. 8 (rev. ed. 1999) (emphases added); *see also* 13 *Williston on Contracts* § 38:1 (stating that a condition that qualifies a party's duty to perform does not qualify the existence of a contract).

Consistent with this basic understanding, the Supreme Court has held that benefits vest even if subject to a condition subsequent and that the terms of the condition are enforceable. *See Nachman*, 446 U.S. at 378 ("[E]ven if the actual realization of expected benefits might depend on the sufficiency of plan assets, they were nonetheless considered vested."); *see also Modzelewski*, 14 F.3d at 1378 ("The Supreme Court . . . has noted that vested pension rights may still be subject to certain conditions subsequent." (citing *Nachman*)); *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 250 (6th Cir. 1996) ("[E]mployers may modify or terminate vested rights where their power [to] do so was an explicit part of the agreement between the parties."). Consequently, under *Litton*, we have

jurisdiction over "disputes as to such continuing benefits." 501 U.S. at 207.

## C. *Conclusion*

In summary, the CBAs gave Plaintiffs the vested right to medical benefits until the age of 65, unless and until "negotiation with the Union" resulted in a change. The interpretation of that negotiation clause and the extent to which it was followed are disputed issues of fact, which require us to reverse and remand the case for further proceedings. We have federal question jurisdiction because Plaintiffs' non-frivolous claims arise under the Labor Management Relations Act and ERISA. The majority contravenes Supreme Court precedent and basic principles of contract law in holding otherwise. I therefore am compelled to dissent.